COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  |  |  |
|---|---|---|
| COUNTY OF EL PASO, | § | |
| Appellant, | § | No. 08-14-00250-CV |
| | § | Appeal from the |
| v. | § | 243rd Judicial District Court |
| JOEL NAVAR, | § | |
| Appellee. | § | of El Paso County, Texas |
| | § | (TC# 2010-1789) |

## **O P I N I O N**

Joel Navar sued the County of El Paso for money damages resulting from the County's failure to issue certificates of compliance for mobile home lots owned by him and for a declaration that he is entitled to those certificates. Claiming governmental immunity from suit and from liability, the County filed a plea to the jurisdiction seeking dismissal of Navar's claims against it. After holding a hearing on the County's plea, the trial court denied it without explanation. The County now brings this interlocutory appeal. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 51.014(a)(8)(West 2015). We affirm, in part, and vacate and render, in part.

### **FACTUAL AND PROCEDURAL BACKGROUND**

Navar owns mobile home lots located in Fabens, TX. Section 232.023 of the Texas Local Government Code requires an owner of land situated within 50 miles of an international border to

file a plat with the County Clerk if subdividing a parcel of land into lots for sale or lease. *See* TEX.LOC.GOV'T CODE ANN. § 232.021(14), TEX.LOC.GOV'T CODE ANN. § 232.023 (West Supp. 2014). The plat must, among other requirements, include certifications that utility services to the lots meet or will meet minimum state standards. TEX.LOC.GOV'T CODE ANN. § 232.023(b)(12).

Each plat must be approved by the commissioners' court. TEX.LOC.GOV'T CODE ANN. § 232.024(a). If the commissioners' court approves a plat, it is required to "issue to the person applying for the approval a certificate stating that the plat has been reviewed and approved by the commissioners court." TEX.LOC.GOV'T CODE ANN. § 232.0028(a). This person may also petition the commissioners' court for a written certification determining:

(1) whether a plat has been prepared and whether it has been reviewed and approved by the commissioners court;

(2) whether water service facilities have been constructed or installed to service the lot or subdivision under Section 232.023 and are fully operable;

(3) whether sewer service facilities have been constructed or installed to service the lot or subdivision under Section 232.023 and are fully operable, or if septic systems are used, whether the lot is served by a permitted on-site sewage facility or lots in the subdivision can be adequately and legally served by septic systems under Section 232.023; and

(4) whether electrical and gas facilities, if available, have been constructed or installed to service the lot or subdivision under Section 232.023.

*See Id*. at § 232.028(b), (d). By law, the commissioners' court must "make its determinations within 20 days after the date it receives the request under Subsection (b) and shall issue the certificate, if appropriate, within 10 days after the date the determinations are made." *Id*. at § 232.028(e).

On or about April 1, 2008, Navar sought certificates of compliance for four parcels of land owned by him. "The certificates . . . are necessary to secure utility services for tenants and

prospective tenants of various mobile homes located on or about the properties." In his handwritten letter to the El Paso County Commissioner's Court and the Roads & Bridges Department requesting the issuance of the certificates, Navar stated:

> Addecuate [sic] water & sewer is available to these subdivisions as required by law. Note that I have gotten certificates of compliance before. I hereby request you honor them or reissue new one without objection. Please respond in writing if any request is denied. [sic] and reason for denial.

.      .      .

> As property owner, I own several lots and I like to help my tenants and prospective tenants have their household and residency stablished [sic] the eseast [sic] posible [sic] way and in compliance. [sic] by having the certificate ready for their utilities conection [sic] to their new home upon request.

> As I have done in the past, prior to the 2005 Law/Enforcement. According to Code, I have been in compliance as permited [sic] by law. Needless to mention, I should not be forced or required to get 30 supply contracts/or paid deposits.

Luis Rodriguez, "the Lead Planner of [El Paso County's] Road & Bridge Department/Public Works Department[,]" denied the issuance of the certificates because "[t]he residences situated on Plaintiff's parcels of land were not in compliance with statutory authority." Rodriguez did not identify the statutory authority on which he relied.

Navar sued the County on May 11, 2010 for failing to issue the certificates and to make the determinations he requested. Sometime thereafter, the County issued the certificates of compliance and made the determinations requested by Navar. According to Luis Rodriguez, the certificates of compliance were issued to Navar because "the number of parcels of land was greater than the number of residences situated therein." Despite receiving the documents he requested, Navar proceeded with his lawsuit against the County. In his amended petition filed April 17, 2014, Navar alleged that the County was liable for engaging in the following conduct:

3

Employees, agents and/or representatives of the County acting within the course and scope of that relationship notified Plaintiff that he would be required to re-construct, at Plaintiff's expense the water and sewage facilities for the parcels of property even though the parcels already contained fully operable water and sewage facilities for the mobile homes as they were situated. Plaintiff was told by the County agent that he would be issued a certificate of compliance only after such re-construction was complete. Plaintiff was also notified that he would be required to re-position mobile homes that were located on the parcels of property even though the mobile homes had existed in their current location for decades before, even though existing water, electrical, gas and sewage facilities had been constructed to service the mobile homes in their current position and even though the County had issued certificates of compliance based on the current mobile home location and current water, sewage, gas and electrical facilities. *The County refused without any legitimate basis to issue the certificates or make the determinations required by law, and the County insisted on the mobile home re-location and facility re-construction without any legitimate basis.* After this litigation had been pending for many years, the County finally issued the certificates. *However, during the time prior to the certificates being issued, Plaintiff was unable to secure utility service and suffered damages as a result of his inability to lease the mobile homes located on the parcels of property because of the County's intentional failure to issue the certificates within the time limits required by law.* [Emphasis added].

Navar brought causes of action for wrongful taking of personal property, for violation of the constitutional prohibition against retroactive laws, and for declaratory relief. As mentioned above, the County responded by filing a plea to the jurisdiction, which the trial court denied.

## STANDARD OF REVIEW

A plea to the jurisdiction based on governmental immunity challenges a trial court's subject-matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). Whether a trial court has subject-matter jurisdiction is a question of law subject to *de novo* review on appeal. *Id*. at 226, 228. In determining whether the plaintiff has carried his burden to allege facts sufficient to establish subject-matter jurisdiction, we review the allegations in the pleadings—accepting them as true and construing them in the plaintiff's favor—and any evidence relevant to the inquiry. *Id*. at 226-27. If the evidence raises a fact question on

4

jurisdiction, the plea must be denied.  *Miranda*, 133 S.W.3d at 227-28.  But if the pleadings affirmatively negate jurisdiction, the plea must be granted.  *Id*. at 226-27.

## GOVERNMENTAL IMMUNITY

The County, as a political subdivision of the state, is entitled to governmental immunity from a suit for money damages unless its immunity has been waived.  *City of Houston v. Carlson*, 451 S.W.3d 828, 830 (Tex. 2014).   Without this waiver, courts have no jurisdiction to adjudicate any claim against the County.  *Id*.   It is Navar's burden to establish the County's consent to be sued through a waiver of immunity.  *Id.*

## REGULATORY TAKING

In its first issue, the County concedes governmental immunity from suit does not shield it from an action for compensation under the takings clause.  *See Gen. Servs. Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 598-99 (Tex. 2001)(noting that governmental immunity "does not shield the State from an action for compensation under the takings clause"); *Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex. 1980)("The Constitution itself is the authorization for compensation for the destruction of property and is a waiver of governmental immunity for the taking, damaging or destruction of property for public use.").   But the County argues Navar failed to allege a viable takings claim under Article I, Section 17 of the Texas Constitution, which provides that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made . . . ."  TEX.CONST. art. I, § 17.   We disagree.

### *Applicable Law*

Navar pled that the County's "conduct constitutes a regulatory taking."  "A regulatory taking is a condition of use 'so onerous that its effect is tantamount to a direct appropriation or

ouster.'" *City of Houston*, 451 S.W.3d at 831 (quoting *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537, 125 S.Ct. 2074, 2081, 161 L.Ed.2d 876 (2005)). On appeal, Navar contends that his taking theory is viable under either the *Penn Central* unreasonable-interference test or the *Nollan/Dolan* exaction test.

The *Nollan/Dolan* exaction test was fashioned by the Supreme Court in *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d. 677 (1987), and *Dolan v. City of Tigard*, 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994). Under this test, "conditioning government approval of a development of property on some exaction is a compensable taking unless the condition[:] (1) bears an essential nexus to the substantial advancement of some legitimate government interest[;] and (2) is roughly proportional to the projected impact of the proposed development." *Town of Flower Mound v. Stafford Estates Ltd. Partnership*, 135 S.W.3d 620, 634 (Tex. 2004)(describing and employing the *Nollan/Dolan* test).

The *Penn Central* unreasonable-interference test was created by the Supreme Court in *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). Under this test, a regulatory taking occurs when government action unreasonably interferes with a landowner's use and enjoyment of the property. *Sheffield Dev. Co., Inc. v. City of Glenn Heights*, 140 S.W.3d 660, 671-72 (Tex. 2004)(describing and employing the *Penn Central* test). But the test is not formulaic. *Id*. at 672-73. Instead, it is an ad-hoc, fact-intensive inquiry. *Id*. Nonetheless, "[w]hile each case must therefore turn on its facts, guiding considerations can be identified," including: (1) "the economic impact of the regulation on the claimant;" (2) "the extent to which the regulation has interfered with distinct investment-backed expectations;" and (3) "the character of the governmental action." *Id*. at 672, quoting *Connolly v. Pension Benefits*

6

*Guar. Corp.*, 475 U.S. 211, 225, 106 S. Ct. 1018, 1026, 89 L.Ed.2d 166 (1986).

Although Navar posits that his regulatory-taking claim is viable under either the *Penn Central* unreasonable-interference test or the *Nollan/Dolan* exaction test, it is evident from the argument advanced in his brief—which we reproduce verbatim—that he is proceeding under the theory that the County's conduct constitutes a taking under *Penn Central*:

> The [County]'s conduct, as alleged, was intentional and constituted an unreasonably interfered [sic] with [his] right to use and enjoy his property. The economic impact and the extent to which the regulation interfered with [his] investment backed expectations was severe. Without utility service, [he] cannot rent any of the trailers on his property. And, the character of the County's action weighs heavily against the County, because the County has failed to articulate any legitimate basis whatsoever for refusing to issue the certificates even though adequate facilities had been installed for decades.

Accordingly, our task is to determine whether Navar has alleged a *Penn Central* claim. Construing the pleadings in favor of the party asserting jurisdiction, we conclude that he has.

### *Discussion*

Navar's petition adequately alleges that the County's refusal to issue certificates of compliance to him without a legitimate basis unreasonably interfered with his right to use and enjoy his property as a mobile home park. He alleges specifically how his current, existing use of the property is circumscribed by the County's illegitimate conduct, *i.e.*, he was unable to lease mobile homes, as well as how he was harmed, *i.e.*, loss of rental income. These allegations, though bare, touch upon the three *Penn Central* factors: (1) economic impact; (2) investment-backed expectation; and (3) character of government action. Lost profits are one relevant factor to consider in assessing the severity of the economic impact of government action, especially when the property affected has had a proven, profitable use at the time of the government action. *See Sheffield Dev. Co.*, 140 S.W.3d at 677; *Mayhew v. Town of Sunnyvale*,

7

964 S.W.2d 922, 935-38 (Tex. 1998). Indeed, "[t]he existing and permitted uses of the property constitute the 'primary expectation' of the landowner that is affected by the regulation." *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 491 (Tex. 2012)(quoting *Mayhew*, 964 S.W.2d at 936). Here, it is undisputed that Navar was using, and was permitted to use, the property as a mobile home park when the County refused to issue the permits. And, although Navar does not specify how much rental income he lost, there is no doubt that the County's failure to issue certificates for "many years" made it economically impossible for Navar's lots to generate income. As for the character of the government action, Navar alleged the County acted illegitimately.

The concurrence, relying on *City of Houston*, concludes Navar's claims of "without cause" and "without any legitimate basis" fail to allege a *Penn Central* claim because he is not asserting that Chapter 232 of the Texas Local Government Code or its application constituted a regulatory taking but rather that the County's misapplication of Chapter 232 did. However, *City of Houston,* stands for the proposition that a challenge to a procedural regulation does not equate to a regulatory taking when the party objects only to the "infirmity of the process." *See City of Houston*, 451 S.W.3d at 832-33.

In *City of Houston*, the City of Houston declared a condominium complex uninhabitable and posted notice that the affected owners would have to obtain certificates of occupancy. *See id*. at 829-30. The posted notice warned that "[f]ailure to comply with this notice may subject you to a municipal court citation." *See id*. at 830. The owners did not seek certificates of occupancy, but the City did not issue citations to the owners for failing to obtain the certificates. *See id*. Instead, the City ordered all residents to vacate the premises. *See id.* Proceeding under the theory that their property was taken when they were ordered to vacate, a group of owners sued the

City for inverse condemnation. *See City of Houston*, 451 S.W.3d at 830. The City filed a plea to the jurisdiction, which was granted by the trial court. *See id.* On appeal, the trial court's decision was affirmed by the Texas Supreme Court, which held that the owners had not alleged a regulatory taking. *See id*. at 831-33. In so holding, the Supreme Court concluded that the owners were, in fact, challenging the procedure used by the City, not a land-use restriction, because their complaints were directed at the penalty imposed and the manner in which the City enforced its standards. *See id*. at 832. The court observed that the owners had not contested any of the City's various codes or property-use restrictions or argued it was unreasonable to require multi-family residential facilities to obtain occupancy certificates. *See id.* at 831.

Here, by contrast, Navar's complaint against the County does not relate solely to the infirmity of the process. Although Navar does complain about the penalty imposed upon him and the manner in which the County enforced its standards, *i.e.*, demanding that he relocate the mobile homes and reconstruct the water, sewage, gas, and electric facilities on the property, he is also arguing that it was unreasonable to require mobile home operators to comply with standards not previously pronounced or enforced to obtain the certificates required by Chapter 232, when those mobile home operators had previously obtained the certificates without issue. In other words, Navar is alleging, in part, that the County affected a regulatory taking by revoking the property's grandfathered status. By proceeding under such a theory, Navar has properly pled a regulatory taking. *See City of Galveston v. Murphy*, No. 14-14-00222-CV, 2015 WL 167178, at \*7 & n.12, \*8 (Tex.App.--Houston [14th Dist.] Jan. 13, 2015, no pet.)(concluding that the trial court did not err in denying the City's plea with regard to claim that City affected a regulatory taking by improperly relying on certain zoning standards to revoke the property's "'grandfathered'

9

non-conforming status").

The County advances two reasons why Navar's takings claim is not viable. Neither one is persuasive.

First, the County asserts that Navar has failed to state a cause of action for inverse condemnation under the Texas Constitution. Inverse condemnation occurs when property is taken for public use without proper condemnation proceedings and the property owner attempts to recover compensation for that taking. *City of Abilene v. Burk Royalty Co.*, 470 S.W.2d 643, 646 (Tex. 1971). To plead inverse condemnation, a plaintiff must allege: (1) an intentional governmental act; (2) that resulted in his property being taken, damaged, or destroyed; (3) for public use. *Little-Tex Insulation Co.*, 39 S.W.3d at 598. The County contends Navar did not meet elements two and three. But Navar pled the County's conduct constituted a regulatory taking, which, as noted above, is a viable theory of compensable takings recognized by the Texas Supreme Court. *See Sheffield Dev. Co.*, 140 S.W.3d at 669-72. Thus, Navar was not required to plead the elements of a traditional inverse condemnation claim.

Second, the County asserts that Navar has failed to allege a regulatory taking. Citing *State v. Biggar*, 873 S.W.2d 11, 13 (Tex. 1994), and *City of Austin v. Teague*, 570 S.W.2d 389, 393 (Tex. 1978), the County contends no regulatory taking occurred because Navar did not allege the County acted to gain an unfair advantage against his economic interest. But the "unfair advantage" theory is not the only recognized theory of a regulatory taking. Another theory of regulatory takings recognized by the Texas Supreme Court is the one pled by Navar in this case—the *Penn Central* claim. The County also contends no regulatory taking occurred because the County's conduct did not deprive Navar of all the beneficial use of the land. But the case the

10

County cites to support its contention—*Sheffield Dev. Co.*—also cautions that "the economic impact of a regulation may indicate a taking even if the landowner has not been deprived of all economically beneficial use of his property." 140 S.W.3d at 672. Thus, Navar was not required to allege that the County's conduct deprived him of *all* economically beneficial use of his property. Finally, the County contends no regulatory taking occurred because it substantially advanced a legitimate state interest. To support its contention, the County cites *Nollan*. But, as discussed above, the *Nollan/Dolan* exaction test is not the theory of a regulatory taking that supports Navar's takings claim. Accordingly, Navar was not required to plead that the County's approval did not bear an essential nexus to the substantial advancement of some legitimate government interest.

The County's first issue is overruled.

## CONSTITUTIONAL PROHIBITION AGAINST RETROACTIVE LAW

In its second issue, the County argues the trial court erred by failing to dismiss Navar's claim that the County's "conduct violates Article I, Section 16 of the Texas Constitution." We agree.

### *Applicable Law*

Article I, section 16 of the Texas Constitution provides, "No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made." TEX.CONST. art. I, § 16. A law is unconstitutionally retroactive if it takes away or impairs rights that have already accrued under existing laws. *See Railroad Comm'n of Texas v. Pend Oreille Oil & Gas Co., Inc.*, 817 S.W.2d 36, 47 (Tex. 1991); *McCain v. Yost*, 155 Tex. 174, 284 S.W.2d 898, 900 (1955).

### *Discussion*

11

The County is immune from Navar's retroactive law claim. Navar does not allege that Section 232.0028 sanctioned the retroactive interference with his existing leases. Instead, Navar challenges the County's "conduct" under this statute. Indeed, in his appellate brief, Navar acknowledges that his complaint concerns the County's insistence that he "alter the mobile home locations and reconstruct the water, sewage, gas, and electric facilities, which had been in place for many years and which had been serving Mr. Navar's tenants under lease contracts." Because Navar does not challenge the governing statute, he has not alleged a retroactive law claim. Further, Navar's claim affirmatively demonstrates that it is barred by governmental immunity. Accordingly, he is not entitled to an opportunity to amend. *See Miranda*, 133 S.W.3d at 226-27.

The County's second issue is sustained.

## DECLARATORY JUDGMENT

In its third issue, the County contends the trial court should have dismissed Navar's claim requesting a declaration of his rights with respect to the issuance of the certificates of compliance. We agree.

### *Applicable Law*

The Declaratory Judgments Act provides that a person whose rights, status, or other legal relations are affected by a statute or ordinance "may have determined any question of construction or validity arising under" the statute or ordinance and obtain a declaration of his rights, status, or other legal relations thereunder. TEX.CIV.PRAC.&REM.CODE ANN. § 37.004(a)(West 2015). The Act waives governmental immunity against claims that a statute or ordinance is invalid. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 n.6 (Tex. 2009). But it does not waive immunity against claims seeking a declaration of the claimant's statutory rights. *Tex. Dep't of Transp. v.*

12

*Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011)(*per curiam*). The Act also does not waive a governmental entity's immunity against a claim that government actors have violated the law. *Heinrich*, 284 S.W.3d at 372-73.

### *Discussion*

The County is immune from Navar's declaratory judgment claim. In his first amended petition, Navar:

> [S]eeks to have a declaration of rights or legal relations in respect to the issuance of certificates of compliance affecting his real property, and requests that the court declare Plaintiff's entitlement to the issuance [sic] said certificates.

On appeal, Navar characterizes his declaratory judgment claim in a similar vein:

> [A] declaration of rights or legal relations as between him and the County in respect to the issuance of certificates of compliance affecting his real property and the determinations made under Section 232.028 of the Local Government Code . . . .

Navar's claim, broadly construed, is one for declarations of his statutory rights and that County officials have violated the law. As discussed above, the County is immune from these types of claims.[1] *See Sefzik*, 355 S.W.3d at 621; *Heinrich*, 284 S.W.3d at 372-73. Further, Navar's claim affirmatively demonstrates that it is barred by governmental immunity. Accordingly, he is not entitled to an opportunity to amend. *See Miranda*, 133 S.W.3d at 226-27.

The County's third issue is sustained.

### CONCLUSION

Because the trial court lacks jurisdiction over Navar's retroactive law claim and declaratory judgment claim, we vacate the trial court's order denying the County's plea to the

---

[1] To the extent Navar is seeking a declaration that Luis Rodriguez's past actions were inconsistent with Section 232.028, governmental immunity would bar any such claim. The *ultra vires* exception to governmental immunity permits only prospective, as opposed to retroactive, declaratory relief. *Heinrich*, 284 S.W.3d at 374-77. Navar's request for a declaration regarding past actions taken by Luis Rodriguez does not seek any prospective declaratory relief.

jurisdiction as to these claims and render judgment dismissing them.  In all other respects, we affirm the trial court's order.


August 7, 2015

YVONNE T. RODRIGUEZ, Justice

Before Rodriguez, J., Hughes, J., and Barajas, Senior Judge
Barajas, Senior Judge (Sitting by Assignment)