

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| CITY OF EL PASO, MAYOR OSCAR LEESER, CITY REPRESENTATIVES EMMA ACOSTA, CARL L. ROBINSON, MICHIEL R. NOE, COURTNEY C. NILAND, ANN MORGAN LILLY, LARRY ROMERO, CLAUDIA ORDAZ, AND LILY LIMON, | § § § § § | No. 08-15-00130-CV<br><br>Appeal from the<br><br>243rd District Court<br><br>of El Paso County, Texas |
| Appellants, | § | (TC # 2014DCV2079) |
| v. | § | |
| WATERBLASTING TECHNOLOGIES, INC. AND THOMAS G. WICKER, JR., | § § | |
| Appellees. | | |

## **O P I N I O N**

Plaintiffs Waterblasting Technologies, Inc. and Thomas G. Wicker, Jr. sued the City of El Paso, the Mayor, and the City Council (collectively, the "City"), seeking a declaration that a bid contract the City awarded was void, as well as an injunction preventing performance of the contract. The City filed a plea to the jurisdiction requesting dismissal based in part on governmental immunity and lack of standing. The trial court denied the plea, and this interlocutory appeal followed. We conclude the trial court lacked subject-matter jurisdiction over Plaintiffs' claims for a variety of reasons. Accordingly, we reverse the trial court's order denying

the plea to the jurisdiction and dismiss Plaintiffs' claims against the City, the Mayor, and the City Council.

## BACKGROUND

In December 2013, the City solicited bids to purchase a "water blasting unit" to remove paint and rubber deposits from the runways at the El Paso International Airport. The solicitation was for a contract requiring the expenditure of more than $50,000 from a municipal fund and was governed by the competitive sealed bidding requirements imposed by Chapter 252 of the Texas Local Government Code. TEX. LOC. GOV'T CODE ANN. § 252.021(a)(1) (West Supp. 2015).

The solicitation was advertised in the *El Paso Times* and informed those wishing to participate to submit sealed bids by January 8, 2014. In response, bids were submitted by Waterblasting Technologies, Inc. (WTI) and also by another company, Team Eagle, Inc., which proposed to sell the City a water blasting unit manufactured by Nilfisk-Advance Technologies, Inc. The bids were opened on January 8, 2014, and on February 25, the City awarded the contract to Team Eagle.

Plaintiffs sued the City, Team Eagle, and Nilfisk on July 2, 2014, claiming the award violated Chapter 252 of the Texas Local Government Code. In addition to seeking declaratory relief that the contract was void, the petition sought an injunction prohibiting the City from paying Team Eagle.[1]

Plaintiffs thereafter amended their petition twice. In their Second Amended Petition, Plaintiffs reiterated they were entitled to a declaratory judgment that the award to Team Eagle was

---

[1] Plaintiffs also claimed the contract was void because WTI holds a patent on the design of the water blasting unit, and that Team Eagle could not legally manufacture and sell the unit to the City without infringing on WTI's patent. That claim was dropped in Plaintiffs' subsequent amended petitions.

void,[2] and more specifically alleged they were entitled either to an injunction under Section 252.061 of the Local Government Code preventing the City from paying any funds to Team Eagle, or if the funds had already been paid, to an order that Team Eagle refund all amounts paid to the City. Plaintiffs further asserted they had notified the City on May 8, 2014 (almost three months after the award was made) that the award to Team Eagle was void, but that the City had "refused to void the award." Plaintiffs alleged the City was not entitled to governmental immunity because immunity had been waived by Section 252.061 of the Local Government Code and because the City had been involved in a procurement process, which they contended was a proprietary function. Plaintiffs alleged the City Council representatives were not entitled to immunity because they had committed an "ultra vires" act in voting to award the contract.

In response, the City included a plea to the jurisdiction in its answer and asserted among other things that Chapter 252 did not waive its governmental immunity, that it was entitled to governmental immunity because it had been performing a governmental function when it awarded the contract, and that, even if immunity was waived, Plaintiffs lacked standing to bring a claim under that provision. The City also contended the Mayor and the City Council had not waived their immunity by committing an ultra vires act.

After hearing, the trial court denied the City's plea to the jurisdiction, and this interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West Supp. 2015).

---

[2] Plaintiffs alleged the City had violated the requirements of Chapter 252 by failing to publish a notice stating the time and place where the bids would be opened, by failing to award the contract to the "lowest responsible bidder" because Team Eagle had failed to provide the necessary information for the City to determine that Team Eagle was a "responsible bidder," and by failing to treat Team Eagle as a nonresponsive bidder even though the City knew Team Eagle was proposing to sell a unit that did not comply with the bid specifications. Plaintiffs also alleged Team Eagle and Nilfisk had violated the bidding requirements in Chapter 252. Plaintiffs dropped their Chapter 252 claim against Team Eagle and Nilfisk in their Third Amended Petition, which was filed after the trial court denied the City's plea to the jurisdiction. Instead, they made a claim for tortious interference with a prospective business relationship. That claim remains pending.

3

**PLEA TO THE JURISDICTION AND STANDARD OF REVIEW**

A plea to the jurisdiction based on governmental immunity challenges a trial court's subject-matter jurisdiction. *County of El Paso v. Navar,* ___S.W.3d___, 2015 WL 4711191, at *3 (Tex.App. – El Paso Aug. 7, 2015, no pet.) (citing *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 225–26 (Tex. 2004)). The purpose of a plea to the jurisdiction is "to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *see County of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex. 2002) (the purpose of a plea to the jurisdiction is to establish a reason why the merits of the plaintiff's claims should never be reached).

In a plea to the jurisdiction, a defendant may challenge the sufficiency of the plaintiff's pleadings to establish jurisdiction. *Miranda,* 133 S.W.3d at 226. The plaintiff has the burden to plead facts that affirmatively demonstrate the trial court's jurisdiction. *Id.* at 228; *Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 446 (Tex. 1993); *Samaniego v. Keller,* 319 S.W.3d 825, 828 (Tex.App. – El Paso 2010, no pet.). When a plea to the jurisdiction challenges the pleadings, the trial court must construe the pleadings liberally in favor of the plaintiff—accepting the plaintiffs' allegations as true—and look to the plaintiffs' intent in their pleadings. *Miranda,* 133 S.W.3d at 226–27; *Tex. Dep't of Transp. v. Ramirez,* 74 S.W.3d 864, 867 (Tex. 2002).

Whether the plaintiff has satisfied its burden to affirmatively demonstrate a trial court's subject-matter jurisdiction is a question of law, which an appellate court reviews *de novo.* *Miranda,* 133 S.W.3d at 226. If the pleadings do not allege facts sufficient to affirmatively demonstrate jurisdiction, but the pleading defects are curable by amendment, the issue is one of pleading sufficiency, and the plaintiff should be afforded an opportunity to amend. *Id.* at 226–27.

4

However, if the pleadings affirmatively negate jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id.* at 227.

A defendant may also challenge the existence of jurisdictional facts in a plea to the jurisdiction, on the ground the facts do not support a finding of subject-matter jurisdiction. *Miranda,* 133 S.W.3d at 226. The City contends that the Plaintiffs failed to "adduce" any jurisdictional evidence to support their claims, thereby implying that the burden shifted to Plaintiffs to come forward with jurisdictional evidence to support their claims. The City, however, never came forward with any evidence of its own to rebut Plaintiffs' allegations. Consequently, the burden never shifted to Plaintiffs to come forward with jurisdictional evidence to support their allegations.[3] As such, our review will be limited to determining whether Plaintiffs have adequately pleaded claims for which the City's governmental immunity has been waived, or alternatively, whether their pleadings negate the existence of jurisdiction.

## DISCUSSION

### Section 252.061 Waives the City's Governmental Immunity

Plaintiffs specifically sued under Section 252.061 of the Local Government Code to enjoin the City from paying any money to Team Eagle under the bid contract. Section 252.061 provides that:

---

[3] In a plea to the jurisdiction, the governmental entity cannot simply deny the existence of jurisdictional facts and force the plaintiffs to raise a fact issue. *Tirado v. City of El Paso,* 361 S.W.3d 191, 194-95 (Tex.App.—El Paso 2012, no pet.); *see also City of El Paso v. Collins,* __S.W.3d__, 2016 WL 240882, at *10 (Tex.App. – El Paso Jan. 20, 2016, no pet. h.). Instead, the governmental entity bears the initial burden to show "through its plea to the jurisdiction and attached evidence that it did not owe a duty as a matter of law and therefore the [plaintiff's] claims are barred by sovereign immunity." *Tirado,* 361 S.W.3d at 196 (citing *Robnett v. City of Big Spring,* 26 S.W.3d 535, 538 (Tex.App. – Eastland 2000, no pet.)); *see also Collins,* 2016 WL 240882, at *10. A plaintiff "will only be required to submit evidence if the defendant presents evidence negating one of those basic facts." *Mission Consol. Indep. Sch. Dist. v. Garcia,* 372 S.W.3d 629, 637 (Tex. 2012) (citing *Miranda,* 133 S.W.3d at 228); *see also Collins,* 2016 WL 240882, at *10 (plaintiff had no burden to present evidence that the City was aware of a dangerous condition on the premises until the City came forward with evidence to establish its lack of knowledge).

5

If the contract is made without compliance with this chapter, it is void and the performance of the contract, including the payment of any money under the contract, may be enjoined by: (1) any property tax paying resident of the municipality; or (2) a person who submitted a bid for a contract for which the competitive sealed bidding requirement applies, regardless of residency, if the contract is for the construction of public works.

TEX. LOC. GOV'T CODE ANN. § 252.061 (West Supp. 2015). Plaintiffs alleged that Section 252.061 waives the City's governmental immunity. The City acknowledges that Section 252.061 creates a cause of action allowing certain parties to bring suit to enjoin the performance of a bid contract made in violation of Chapter 252, as well as to enjoin the payment of money under that contract. The City argues in its Issue Four, however, that Section 252.061 does not contain any express statement that the City's immunity is waived for such suits.

The City correctly points out that for a statute to effectuate a waiver of governmental immunity, the legislative intent to waive immunity must be expressed in clear and unambiguous language. *Harris County Hosp. Dist. v. Tomball Reg'l Hosp.,* 283 S.W.3d 838, 842 (Tex. 2009); *see* TEX. GOV'T CODE ANN. § 311.034 (West 2013) ("[A] statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language."); *see City of El Paso v. Hernandez,* 16 S.W.3d 409, 414-15 (Tex.App. – El Paso 2000, pet. denied).

When as here the Legislature has not used language in the statute expressly stating that "immunity is waived," it can be difficult to determine the Legislature's intent. *Tomball Reg'l Hosp.,* 283 S.W.3d at 844. The Supreme Court has therefore developed four "aids" to assist courts in analyzing whether the Legislature intended to waive immunity in a statute that lacks these decisive words: "(1) whether the statutory provisions, even if not a model of clarity, waive immunity without doubt; (2) ambiguity as to waiver is resolved in favor of retaining immunity; (3) immunity is waived if the Legislature requires that the entity be joined in a lawsuit even though the

6

entity would otherwise be immune from suit; and (4) whether the Legislature provided an objective limitation on the governmental entity's potential liability." *Id.* (citing *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 697-98 (Tex. 2003)).

Relying on these four "aids," we have no doubt that the Legislature intended to waive immunity for municipalities when it enacted Section 252.061 of the Local Government Code. First, the statute provides objective limitations on the municipality's potential liability. Section 252.061 does not allow an award of monetary damages. Rather, the Legislature delineated only two specific remedies in Section 252.061, *i.e.*, a party may to seek to enjoin performance of the contract or to enjoin the payment of any money due under the contract. More important, although the statute does not expressly require that a municipality be joined in the lawsuit, it is difficult to comprehend how a court would be able to enjoin performance of a municipal contract, and in particular, how a court would be able to enjoin a municipality from paying the winning bidder under the contract, if the plaintiff was not permitted to name the municipality as a defendant. To the contrary, if we were to accept the City's argument that the Legislature did not intend a municipality to be named as a defendant in a lawsuit under Section 252.061, this would leave a plaintiff unable to achieve the stated remedies in the statute. Such a construction would effectively render the remedies provided in the statute meaningless.[4] *See City of Dallas v. TCI W. End, Inc.*, 463 S.W.3d 53, 55-56 (Tex. 2015) (when determining the Legislature's intent in enacting a statute, courts are required to give meaning to all provisions within the statute when possible, and not to render any provisions meaningless).

---

[4] We note that the legislative intent to allow a party to enjoin the performance of a void contract could arguably be accomplished by filing a suit against the winning bidder and seeking to enjoin it from performing under the contract, but that the City would necessarily be a party to an action seeking to enjoin payment of money under the contract.

Our conclusion is informed by prior decisions, including the Texas Supreme Court's decision in *Kerrville State Hosp. v. Fernandez*, 28 S.W.3d 1 (Tex. 2000). In *Kerrville*, the Supreme Court considered whether the Legislature had waived the immunity of state agencies in cases in which a state employee had sued under the workers' compensation anti-retaliation statute. The Court found it significant that the Legislature had created a cause of action in the statute that allowed employees to file a lawsuit against an "employer," and had in turn, also designated state agencies as an "employer" for purposes of the anti-retaliation statute in the State Applications Act (SAA). Although neither the statute nor the SAA expressly stated that the Legislature intended to waive the immunity of state agencies to be named as defendants in anti-retaliation lawsuits, the Court held that the only "sensible construction" of this legislative scheme was to conclude that the Legislature intended to waive immunity for state agencies, thereby allowing them to be named as a defendant "employer" in anti-retaliation lawsuits. *Id*. at 7.

More recently, our sister court considered the exact issue posed in this case—whether the Legislature intended to waive a municipality's immunity when it enacted Section 252.061 of the Local Government Code. *City of New Braunfels v. Carowest Land, Ltd.,* 432 S.W.3d 501 (Tex. App. – Austin 2014, no pet.). As here, in *Carowest*, a property tax paying resident had sued the municipality for injunctive relief, contending the city had violated Section 252.061 by awarding a contract in violation of the competitive bidding requirements imposed by Chapter 252. *Id.* at 532. The taxpayer argued that the Legislature had waived the city's governmental immunity when it created the cause of action. *Id.* at 532-33. The court agreed, noting that the city had advanced no "cogent argument to the contrary," and concluded that the Legislature had waived the city's immunity by enacting Section 252.061. *Id.* at 533, and n.126.

8

We reached a similar conclusion when interpreting an analogous statute waiving a county's immunity for violating the bid requirements of Chapter 262 of the Local Government Code. *See Labrado v. County of El Paso,* 132 S.W.3d 581, 594 (Tex.App. – El Paso 2004, no pet.); *see also* TEX. LOC. GOV'T CODE ANN. § 262.033 (West 2005) (which allows a property tax paying citizen of the county to "enjoin performance under a contract made by a county in violation of" the requirements of Chapter 262). We concluded that plaintiff's claim for injunctive relief under Chapter 262 as well as his claim for declaratory relief were not barred by sovereign immunity. *Labrado,* 132 S.W.3d at 592-94; *see also Dallas County v. Cedar Springs Invs., L.L.C.*, 375 S.W.3d 317, 321 (Tex.App. – Dallas 2012, no pet.) (also holding the analogous provision applicable to counties under Chapter 262 of Local Government Code operates as a waiver of immunity).

Applying these same principles, we conclude the Legislature intended to waive immunity for municipalities when it created a cause of action in Section 252.061 allowing a party to bring a claim for injunctive relief to enjoin the performance of a municipal contract not made in conformance with the requirements of Chapter 252 and the payment of money under that contract. If a party with standing under Section 252.061 could not sue the municipality, the party would effectively be precluded from enjoining the contract's performance or enjoining payment of money under the contract, leading to the absurd result that the Legislature intended to grant the parties a right without a remedy. We therefore conclude that the only sensible construction of Section 252.061 is that it waives the governmental immunity of a municipality for a party with standing under the statute to sue the municipality for declaratory relief that the contract is void and

9

injunctive relief to prevent enforcement of a void contract and to prevent payment of money under that void contract.[5]

## Standing to Sue under Section 252.061

In its Issue One, the City contends that even if Section 252.061 waived its immunity, Plaintiffs have no standing to bring a suit under that provision.    Section 252.061 gives standing to two classes of plaintiffs:    "(1) any property tax paying resident of the municipality; or (2) a person who submitted a bid for a contract for which the competitive sealed bidding requirement applies, regardless of residency, if the contract is for the construction of public works."    TEX. LOC. GOV'T CODE ANN. § 252.061.    We conclude that Wicker has standing to sue under Section 252.061, but that WTI does not.

### *Standard of Review*

Standing is a question of law we review *de novo. Heckman v. Williamson Cnty.,* 369 S.W.3d 137, 150 (Tex. 2012); *Grant v. Espiritu*, 470 S.W.3d 198, 201 (Tex.App. – El Paso 2015, no pet.).    Standing is a constitutional prerequisite to suit.    *Heckman,* 369 S.W.3d at 150; *see Sw.*

---

[5] Because we have concluded that Section 252.061 waives the City's governmental immunity, we need not address the alternative contention that the City was not entitled to governmental immunity because the act of procuring the water blasting unit was a proprietary act (City's Issue Three).    We agree with the City, however, that its act of purchasing the water blasting unit for use at its international airport was a governmental function because it was made in the interest of the public at large, and not solely for the residents of the City of El Paso.    *See Gates v. City of Dallas,* 704 S.W.2d 737, 738-39 (Tex. 1986).    Further, we note that Section 22.002 of the Texas Transportation Code provides that virtually all activities relating to airport operations and maintenance are considered governmental, rather than proprietary functions.    TEX. TRANSP. CODE ANN. § 22.002 (West 2011).    The City's acquisition of the water blasting unit fell precisely within this Code provision, as it was an acquisition of equipment for the maintenance of the airport meant to eliminate an airport hazard, *i.e.,* paint and rubber on the airport's runways.    *See* TEX. TRANSP. CODE ANN. § 22.001(1)(B), (3)(B) (West 2011).    We note the Supreme Court reached a similar conclusion when it interpreted comparable language in the "Municipal Airports Act," the predecessor statute to Chapter 22 of the Transportation Code, which categorized airport operations as being a governmental function.    *City of Corsicana v. Wren*, 317 S.W.2d 516, 520-21 (Tex. 1958).    We also agree that the Texas Tort Claims Act provisions defining some airport activities to be proprietary are not applicable to this case.    S*ee Hale v. City of Bonham,* 477 S.W.3d 452, 458-59 (Tex.App. – Texarkana 2015, pet. filed) (where plaintiff suffered damages as the result of an airport employee's negligence, which did not fall within the purview of the Texas Tort Claims Act, the City retained immunity from suit).

*Bell Tel. Co. v. Mktg. on Hold Inc.,* 308 S.W.3d 909, 915 (Tex. 2010). A court has no subject-matter jurisdiction over a claim made by a plaintiff who lacks standing to assert it. *Heckman,* 369 S.W.3d at 150; *DaimlerChrysler Corp. v. Inman,* 252 S.W.3d 299, 304 (Tex. 2008); *Grant*, 470 S.W.3d at 201; *Ranchero Esperanza, Ltd. v. Marathon Oil Co.*, __S.W.3d__, 2015 WL 4504947, at *3 (Tex.App. – El Paso July 24, 2015, no pet.) ("Standing is a component of subject-matter jurisdiction."). Thus, if a plaintiff lacks standing to assert one of his claims, the court lacks jurisdiction over that claim and must dismiss it. *Heckman,* 369 S.W.3d at 150; *Grant*, 470 S.W.3d at 201-02. The standing inquiry "requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Heckman,* 369 S.W.3d at 156 (quoting *Allen v. Wright,* 468 U.S. 737, 752, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)); *Grant*, 470 S.W.3d at 202.

### Wicker's Standing as a Property Taxpaying Resident

Plaintiffs pleaded that Wicker had standing to sue as a property tax paying resident of the City of El Paso. The City argued that Wicker, regardless of whether he was a property tax paying resident of El Paso, had no standing because the funds used to acquire the water blasting unit were not tax dollars but funds generated by the Airport Enterprise Fund.[6]

There are two problems with this argument. First, the City provided no evidence to establish the source of the funds used to purchase the water blasting unit. Based on the state of the record, we are unable to determine whether the funds to be used to pay for the water blasting unit were to come from tax money or from funds generated by the Airport Enterprise Fund. Second, Wicker would have standing to sue even if no tax money was used to purchase the water blasting

---

[6] The Texas Transportation Code authorizes an Airport Enterprise Fund. *See* TEX. TRANSP. CODE ANN. § 22.054 (West 2011). The revenue placed into such a fund may be used by the local government for a variety of purposes, including contracts for the purpose of equipping and maintaining an airport. *Id.* at §§ 22.019, 22.054 (West 2011).

unit.   Section 252.061 expressly provides that "any property tax paying resident" of a municipality may challenge a contract made without compliance with Chapter 252, and imposes no requirement that the challenged contract be financed by or paid for with tax money.   The City suggests that we should imply such a restriction into the Code, arguing that the Legislature's decision to allow only "tax paying" residents to sue, rather than all residents in general, was an indication that it intended to allow only suits in which tax money was involved.   We disagree.

Much of the City's argument on this point is based on how the courts have restricted standing in taxpayer lawsuits at common law, where taxpayer standing evolved as an exception to the general rule that a plaintiff must possess "an interest in a conflict distinct from that of the general public[.]"   *Williams v. Lara,* 52 S.W.3d 171, 178 (Tex. 2001).   This judicially-created taxpayer exception to the general rule on standing permits taxpayers to sue on behalf of the public "to enjoin the illegal expenditure of public funds," without demonstrating any "particularized injury."   *Id.* at 179; *see also Salazar v. Wilson*, ___S.W.3d.___, 2014 WL 1940673, at \*3 (Tex. App. – El Paso May 14, 2014, no pet.) (a taxpayer has standing to sue to enjoin the illegal expenditure of public funds, and need not demonstrate a particularized injury).   One limitation on this rule, as the City points out, is that a taxpayer at common law has standing only to sue to enjoin the expenditure of tax revenues, and cannot sue to enjoin the expenditure of funds from other sources.   *See, e.g., S. Texas Water Auth. v. Lomas,* 223 S.W.3d 304, 308 (Tex. 2007) (per curiam) (residents of a municipality lacked standing as taxpayers to bring an action for declaratory judgment and damages challenging the city's water supply contract where the funds to be paid

12

under the water-supply contract did not derive from taxes, and instead were to be solely derived from revenues received by the City from its waterworks system).[7]

In the present case, however, Wicker is not asserting standing under the judicially-created common law exception for taxpayer standing. Instead, he is asserting standing under the provisions of Section 252.061 itself. When standing is conferred by statute, we must analyze the statute itself to determine whether the Legislature intended to confer standing on a particular party. *See, e.g., Brown v. De La Cruz,* 156 S.W.3d 560, 563 (Tex. 2004) (when a private cause of action is alleged to derive from a statutory provision, the court must ascertain the drafters' intent from the statute itself). It is the statute that provides the framework for the standing analysis, and the "standing analysis begins and ends with the statute itself." *Marauder Corp. v. Beall*, 301 S.W.3d 817, 820 (Tex.App. — Dallas 2009, no pet.).

In conferring taxpayer standing by statute, the Legislature is not required to follow the common law rule restricting standing solely to suits involving the expenditure of tax revenues. Instead, it is generally recognized that the Legislature may "[w]ithin constitutional bounds . . . grant a right to a citizen or to a taxpayer to bring an action against a public body . . . without proof of particular or pecuniary damage peculiar to the person bringing the suit." *Scott v. Bd. of Adjustment,* 405 S.W.2d 55, 56 (Tex. 1966). Thus, in a variety of cases, taxpayers who have been granted a statutory right to seek injunctive relief to enjoin a governmental entity have been permitted to sue even when the government's actions did not involve the expenditure of tax

---

[7] *See also Franks v. Welch,* 389 S.W.2d 142, 145 (Tex.Civ.App. – Houston 1965, writ ref'd n.r.e.) (Houston residents lacked standing as taxpayers to bring a suit to declare a contract between the city and river authority void, and to enjoin performance of the contract, where they failed to contend that any funds necessary to perform the contract were to be raised by taxation); *Clark v. City of San Angelo,* 269 S.W.2d 594, 595 (Tex.Civ.App. – Austin 1954, no writ) (as a taxpayer, the plaintiff did not have a "justiciable or litigable interest to attack the validity of a bond issue that is payable solely out of revenues of a water supply system of a municipality that can never be paid out of tax funds[,]" and therefore lacked standing to bring a lawsuit seeking to enjoin issuance of the bonds).

revenues. *See, e.g., id.* (statute that authorized "any taxpayer" to bring a suit to enjoin the illegal activities of a City's Board of Adjustment, allowed a taxpayer to bring a suit to enjoin the issuance of a permit allowing a third party to erect a sign on a scenic highway even though no tax revenues were involved in the issuance of the permit); *Turullols v. San Felipe Country Club*, 458 S.W.2d 206, 209 (Tex.Civ.App. – San Antonio 1970, writ ref'd n.r.e.) (taxpayers had standing under statute that allowed "any taxpayer" residing in a municipality to bring a suit to enjoin the city's wrongful sale of recreational properties, despite the fact that no tax revenues were implicated).[8]

In a substantially similar case, we concluded that a taxpayer, who was given standing under the County Purchasing Act to sue to enjoin a contract awarded in violation of that Act, was not required to demonstrate that he suffered any damage peculiar to himself in order to file suit. *Labrado,* 132 S.W.3d at 588-89. In that case, we stated in no uncertain terms that, "[i]f a statute provides that any citizen or taxpayer may bring an action, the plaintiff need only establish that he or she falls within one of these categories to establish standing; it is not necessary to establish an interest peculiar to the plaintiff." *Id.* at 587; *see also Associated Gen. Contractors of Texas, Inc. v. City of Corpus Christi,* 694 S.W.2d 581, 582 (Tex.App. – Corpus Christi 1985, no writ) (allowing a property taxpaying citizen to bring a lawsuit to enjoin performance of an allegedly void municipal contract under the predecessor statute to Chapter 252, even when the plaintiff had not suffered any injuries as the result of the contract award).

---

[8] *See also McCoy v. Williams,* 500 S.W.2d 178, 180-81 (Tex.Civ.App. – El Paso 1973, writ refused n.r.e.) (agreeing with *Scott* that a taxpayer had standing to challenge the improper transfer of property under the same statute, without a showing that the taxpayer suffered a "particular damage other than that common to the general public"); *J. D. Abrams, Inc. v. Sebastian,* 570 S.W.2d 81, 86 (Tex.Civ.App. – El Paso 1978, writ ref'd n.r.e.) (plaintiff taxpayers were not required to show that they suffered any damages "peculiar to them," where ordinance granted any taxpayer the right to challenge an unfavorable ruling from the City Council on appeal from a decision of the planning commission).

14

The only case that the City cites to the contrary is *Hazelwood v. City of Cooper,* 87 S.W.2d 776 (Tex.Civ.App. – Texarkana 1935, writ ref'd), in which the court reviewed the language used in the Bond and Warrant Act of 1931 in its entirety, and concluded that the Legislature had intended to confer taxpayer standing only in cases in which the challenged bond or obligation was "created or attempted to be created which will be paid for out of funds raised by taxation." *Id*. at 777. In the present case, however, our review of Chapter 252 fails to reveal any intent of the Legislature to limit the right of a taxpayer to bring a lawsuit only if the bid contract is funded through tax revenue sources. To the contrary, we find it significant that the competitive bidding provisions in Chapter 252, which Plaintiffs claim were violated, are made applicable to expenditures of more than $50,000 "from one or more municipal funds," and there is no requirement that those "municipal funds" come from a tax revenue source. TEX. LOCAL GOV'T CODE ANN. § 252.021(a)(1).

If the Legislature wanted to restrict taxpayer standing to only lawsuits challenging a contract funded through tax revenues, it was capable of doing so. We interpret the Legislature's silence on this point to be an indication of its intent not to impose any such restriction. *See, e.g., Mitchell v. State*, 473 S.W.3d 503, 517 (Tex.App. – El Paso 2015, no pet.) (where Legislature clearly knew how to express itself to reach a certain outcome, its failure to do so was indicative of its intent). Therefore, regardless of whether the City did not use, or intend to use, tax revenues in procuring the water blasting unit, we conclude that Wicker had standing under the terms of Section 252.061 to bring his claim to enjoin payment under the contract.

### *WTI's Standing as a Bidder*

15

Plaintiffs pleaded that WTI had standing to sue under Section 252.061 because WTI submitted a bid to be awarded the contract, and that the contract was a "public works procurement" contract within the meaning of the statute. The City argued that WTI did not have standing because the contract was not for the "construction of public works," as required by the statute. Plaintiffs counter that they adequately pleaded that the contract was for the "construction of public works" and that the City provided no evidence to the contrary. Plaintiffs contend that in the absence of any evidence to the contrary, we must accept as true their allegation that the contract was for the construction of a public work. There are several problems with Plaintiffs' argument.

First, Plaintiffs never alleged in their pleadings that the contract was for the "construction" of a public work. Instead, Plaintiffs alleged that the contract "involves a public works procurement," and made no allegation that the procurement was in any way related to any construction project to be undertaken by the City. Further, Plaintiffs expressly described the procurement was for a water blasting unit, to be manufactured to the specifications set forth in the solicitation for the purpose of removing paint and rubber from the City's airport runways.

Our task in considering a plea to the jurisdiction is to review the pleadings to determine if the plaintiff has alleged a valid claim for which governmental immunity has been waived. While we generally accept the plaintiff's allegations as true, if those allegations affirmatively negate the existence of subject-matter jurisdiction, the plea to the jurisdiction must be granted without allowing the opportunity to amend. *Miranda*, 133 S.W.3d at 226-27. We conclude that Plaintiffs' own pleadings demonstrate that WTI has no standing under Section 252.061, because the contract Plaintiffs challenged and described in their pleadings is not a contract for the "construction of public works," as required by Section 252.061.

16

Although the Legislature did not define "construction of public works" in Section 252.061, the Code Construction Act allows us to construe statutes with undefined terms by looking to laws on the same or similar subjects. *Mitchell,* 473 S.W.3d at 514 (citing TEX. GOV'T CODE ANN. § 311.023(4) (West 2013)). In Section 2252.031 of the Texas Government Code, which relates to interest to be paid on retained public works contract payments and is expressly made applicable to municipalities, the Legislature has defined the term "public works" to include the "construction, alteration, or repair of a public building or the construction or completion of a public work." TEX. GOV'T CODE ANN. § 2252.031(3) (West 2008). Further, courts have made it clear that "public works" contracts are those related to the construction of either buildings or roadways. *See, e.g., Dallas Metal Fabricators, Inc. v. Lancaster Indep. Sch. Dist.,* 13 S.W.3d 123, 125 (Tex.App. – Dallas 2000, pet. denied) ("public work contract" means a contract for constructing, altering, or repairing a public building or carrying out or completing any public work); *see also Dealers Elec. Supply Co. v. Scroggins Const. Co., Inc.,* 292 S.W.3d 650, 652 n.1 (Tex. 2009) (noting that under Chapter 2253, a " '[p]ublic work contract' means a contract for constructing . . . a public building"); *LA Ash, Inc. v. Texas A & M Univ.,* No. 10-07-00388-CV, 2008 WL 4742135, at *2 (Tex.App. – Waco Oct. 29, 2008, no pet.) (citing Black's Law Dictionary as defining "public work" as a structure, such as a road or dam built by the government for public use and paid for by public funds). Moreover, as our sister court in Waco has expressly recognized, the term "public work" contract was "meant to embrace those contracts akin to building contracts," but is typically not used in reference to a contract that is for "services, supplies, equipment and the like." *LA Ash, Inc.,* 2008 WL 4742135, at *3; *see also Employers' Cas. Co. v. Stewart Abstract Co.,* 17 S.W.2d 781, 782 (Tex.Comm'n App. 1929) (holding that while "construction of a county road is a public

17

work, but it could hardly be said that a contract for the purchase of a road grader would be a public work[,]" as a grader is in the nature of a supply or equipment).   As such, a "public works" contract does not encompass the City's purchase of the water blasting unit—which was merely equipment.

In any event, Section 252.061 does not limit standing merely to challenges to "public works" contracts, but instead contains an important qualifying term that a losing bidder may challenge only a contract for the "*construction* of public works."   Although the Legislature did not define the term "construction," we give undefined words "their common, ordinary meaning unless the statute clearly indicates a different result."   *William Marsh Rice Univ. v. Refaey*, 459 S.W.3d 590, 593 (Tex. 2015) (quoting *Jaster v. Comet II Constr., Inc.,* 438 S.W.3d 556, 563 (Tex. 2014) (plurality)).   The common meaning of otherwise undefined statutory terms may be found by reviewing dictionary definitions.   *See, e.g., State v. $1,760.00 in U.S. Currency,* 406 S.W.3d 177, 180-81 (Tex. 2013) (looking to dictionary definitions of the term "novelty" as used in a Penal Code provision relating to the illegal use of gambling machines).   Various dictionaries define "construction" to mean the act of building something such as a building or a roadway.   *See, e.g., Construction Definition*, Merriam-Webster.com, http:// www. merriam- webster. com/ dictionary/ construction (last visited April 13, 2016) (defining "construction" as "the act or process of building something (such as a house or road)"); *see also Construction Definition*, OxfordDictionaries.com, http://www.oxforddictionaries.com/us/definition/american_english/construction   (last   visited April 13, 2016) (defining "construction" as "[t]he building of something, typically a large structure.").[9]

---

[9] We note that there are alternative definitions of the term, "construction" that relate to the "creation or formation of an abstract entity," or the "arrangement of words according to syntactical rules."   *See, e.g., Construction Definition*, OxfordDictionaries.com, http://www.oxforddictionaries.com/us/definition/american_english/construction (last visited April 13, 2016).   However, this meaning was clearly not intended by the Legislature in context when it

18

Accordingly, based on the factual allegations in Plaintiffs' own pleadings, we conclude the contract WTI seeks to challenge in its lawsuit is for the procurement of equipment, and is not for the "construction of public works," as that term is used in Section 252.061. As such, we conclude that WTI lacks standing to bring its lawsuit under Section 252.061.

## Plaintiffs' Claims are Moot

Although the parties did not address this issue in the trial court or on appeal, it appears that Plaintiffs' claim for injunctive relief under Section 252.061, as well as their related claim for declaratory relief, have both been rendered moot by the performance of the contract.

### *The Mootness Doctrine*

The mootness doctrine applies to cases in which a justiciable controversy exists between the parties at the time the case arose, but the live controversy ceases because of subsequent events. *Matthews v. Kountze Indep. Sch. Dist.*, __S.W.3d__, 2016 WL 368360, at *2 (Tex. Jan. 29, 2016); *Heckman*, 369 S.W.3d at 162. If a controversy ceases to exist at any time during the pendency of the legal proceedings, even on appeal, the case becomes moot. *Williams,* 52 S.W.3d at 184. An issue becomes moot "when one seeks a judgment on some matter which, when rendered for any reason, cannot have any practical legal effect on a then-existing controversy." *In re Estate of Hemsley,* 460 S.W.3d 629, 638 (Tex.App. – El Paso 2014, pet. denied); *see also Zipp v. Wuemling,* 218 S.W.3d 71, 73 (Tex. 2007); *VE Corp. v. Ernst & Young,* 860 S.W.2d 83, 84 (Tex. 1993) (if a court's action on the merits cannot affect the rights of the parties, the case is moot).

---

referred to contracts for the "construction of public works." We therefore decline to look to those alternative meanings in construing the statute. *See, e.g., $1,760.00 in U.S. Currency*, 406 S.W.3d at 181 (rejecting alternative definition of term "novelty," noting that the context of the terms used in the statute clearly evidenced that the Legislature had a contrary intent in using that term).

Like standing, mootness is a component of subject-matter jurisdiction. *Labrado,* 132 S.W.3d at 589. Mootness defeats a court's subject-matter jurisdiction over a particular controversy. *State ex rel. D.L.S.,* 446 S.W.3d 506, 513-14 (Tex.App. – El Paso 2014, no pet.). Because subject-matter jurisdiction is essential to a court's authority to dispose of cases, we may raise the issue *sua sponte* at any time. *Juarez v. Tex. Ass'n of Sporting Officials El Paso Chapter,* 172 S.W.3d 274, 277–78 (Tex.App. – El Paso 2005, no pet.); *Labrado,* 132 S.W.3d at 586 (subject matter jurisdiction may not be waived by the parties and may be raised for the first time on appeal by any party or the court itself).

### *Plaintiffs' Claims against the City are Moot*

Plaintiffs' sole basis for an injunction against the City was Section 252.061. By its terms, the only relief available to Plaintiffs under Section 252.061 was that "the performance of the contract, including the payment of any money under the contract, may be enjoined[.]" TEX. LOC. GOV'T CODE ANN. § 252.061. Plaintiffs' pleadings and their acknowledgments at oral argument demonstrate that Plaintiffs' claims against the City have become moot because the contract in question has been fully performed, and consequently any judgment from the trial court on the merits cannot affect the rights of Plaintiffs and the City.

We note that Plaintiffs, in both their Original Petition and their Second Amended Petition, did not seek to enjoin all performance of the contract, but sought to enjoin the City only from paying Team Eagle under the contract. This indicated that Team Eagle had already delivered the water blasting unit to the City even before Plaintiffs originally filed suit in July 2014, almost five months after the bid had been awarded to Team Eagle. Further, in their Second Amended Petition, Plaintiffs acknowledged that the City may have already paid Team Eagle under the terms

20

of the contract, when it requested in the alternative that "if payment has been made," the trial court order "Defendant Team Eagle to refund the payment to Defendant City." Moreover, there is no indication in the record that Plaintiffs ever sought either a temporary restraining order or a temporary injunction, which if granted would have restrained the City from going forward with the performance of the contract by accepting the unit and paying Team Eagle during the pendency of the trial court proceedings. *Cf. Dallas County v. Cedar Springs Invs, L.L.C.,* 375 S.W.3d 317, 319 (Tex.App. – Dallas 2012, no pet.) (opin. on reh'g) (where the plaintiff sought and obtained a temporary injunction to prohibit performance of the contract during the pendency of the lawsuit).

But, most important to our analysis, both parties acknowledged at oral argument that Team Eagle had not only already delivered the water blasting unit to the City but also that the City has already paid Team Eagle for that equipment. Our analysis whether Plaintiffs' claims against the City have been rendered moot can extend to matters outside the record. *See Williams*, 52 S.W.3d at 184; *see also Sabine Offshore Serv., Inc. v. City of Port Arthur*, 595 S.W.2d 840, 841 (Tex. 1979) (recognizing that matters outside the record can be considered by a court in determining its own jurisdiction); TEX. GOV'T CODE ANN. § 22.220(c) (West Supp. 2015) (a court "may, on affidavit or otherwise, as the court may determine, ascertain the matters of fact that are necessary to the proper exercise of its jurisdiction"). We therefore consider the parties' acknowledgment at oral argument that the contract in question has been fully performed by Team Eagle's delivery of the water blasting unit and by the City's subsequent payment for that equipment. This leads to the conclusion that Plaintiffs' claims against the City are moot.

For example, in *Hulett v. West Lamar Rural High Sch. Dist.,* 232 S.W.2d 669 (Tex. 1950), a group of taxpayers sued to enjoin their school district from constructing school buildings made

21

out of wood, on the ground the bonds authorizing the construction called for buildings "of materials other than wood." The district court denied the plaintiffs' request for a temporary injunction, and by the time the matter reached the court of appeals, the construction was already 90-95 percent complete. The court of appeals therefore found the plaintiffs' lawsuit to be moot. Further, by the time the matter was heard by the Texas Supreme Court, the parties acknowledged at oral argument that the contract had been "fully performed, that the buildings had been accepted by the school authorities, and that the contract price had been fully paid by the school district to the contractor." The Supreme Court therefore concluded that the case was moot, leading to dismissal of the taxpayers' claims. *Id*. at 669-70.

We do note that Plaintiffs pleaded in the alternative for an order requiring Team Eagle to refund payment to the City if the City had already paid Team Eagle. To the extent Plaintiffs intended that alternative relief to apply to the City, that relief was not available. Section 252.061 does not provide for such retroactive relief, and in any event, such retroactive relief was not allowed at common law.

Various courts have discussed this question in cases brought by taxpayers seeking injunctive relief against a governmental entity, drawing a distinction between suits to restrain the illegal expenditure of public funds in the future, which are permissible, and suits to recover public funds already illegally expended, which are not permissible. *See, e.g., Osborne v. Keith,* 142 Tex. 262, 177 S.W.2d 198, 200 (1944); *Zimmelman v. Harris County,* 819 S.W.2d 178, 182 (Tex.App. – Houston [1st Dist.] 1991, no writ); *Kordus v. City of Garland,* 561 S.W.2d 260, 262–63 (Tex.Civ.App. – Tyler 1978, writ ref'd n.r.e.).

22

The Supreme Court reached a similar conclusion in *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 557-58 (Tex. 2000). In that case, two taxpayers sued their school district seeking to prohibit the district from making future installment payments due on a lease-purchase financing agreement to finance a construction project that had already been completed and paid for. The Supreme Court concluded that the parties did not have standing to seek injunctive relief to enjoin the performance of a contract that was already performed. Citing its prior holding in *Hulett*, the Supreme Court recognized that a taxpayer's lawsuit seeking to enjoin the illegal expenditure of public funds must be based on challenges to "future expenditures" to be made by a governmental entity. *Id.* at 556.

This Court has also recognized that lawsuits to enjoin the performance of a contract become moot after the contract has been fully performed, thereby depriving a plaintiff of standing, even when that standing is conferred by statute. *See Labrado*, 132 S.W.3d at 589. In *Labrado*, the losing bidder on a county contract brought a lawsuit under Section 262.033 of the Local Government Code (the County Purchasing Act), which provides that "[a]ny property tax paying citizen of the county may enjoin performance" of a county contract made in violation of the Act. *Id.* at 587. After determining that the statute provided the plaintiff taxpayer with standing to file a lawsuit, we considered the whether the plaintiffs' request for declaratory relief was moot because the contracts in question had already been fully performed or had expired by their own terms. In resolving that issue, we noted that a "suit to enjoin the performance of a contract becomes moot after the contract has been fully performed." *Id.* at 589 (citing *Hulett*, 232 S.W.2d at 670). In addition, we pointed out that, "[w]hen a request for injunctive relief becomes moot because the action sought to be enjoined has been accomplished, a request for declaratory relief also becomes

23

moot.[10]  *Id.* (citing *Speer v. Presbyterian Children's Home & Serv. Agency,* 847 S.W.2d 227, 229 (Tex. 1993)).

We ultimately concluded in *Labrado* that the plaintiff's case survived under the "capable-of-repetition-yet-evading-review exception to the mootness doctrine."  *Id.* at 591.  We noted that because the contracts would have expired by their own terms before their lawsuit was resolved, even if the parties had requested a temporary injunction, the contracts could and had evaded judicial review by a court.  *Id.* at 601.  We also held that the transit contracts were "capable of repetition," as the county periodically solicited bids on the contracts, and the same bidders typically submitted bids in response to the county's solicitations.   Therefore, the plaintiffs might be subjected to the same violations in the future if the court did not rule on the validity of the county's bid procedures in that case.  *Id.* at 591-92.

At least two factors distinguish this case from *Labrado*.  First, unlike the contracts in *Labrado*, which evaded review because they were time sensitive and would have expired on their own terms even if the parties had requested a temporary injunction, the performance of the contract in the present case could have been temporarily enjoined by the trial court and remained subject to review by the trial court.  Thus unlike in *Labrado*, Plaintiffs could have ensured that their claims did not "evade" review by seeking a temporary injunction.  However, Plaintiffs made no such request.  Second, unlike the contracts in *Labrado*, which were ongoing and were awarded by the County on a periodic basis, the purchase in this case was a one-time event, and there is

---

[10]Although we found that the plaintiff's claim for injunctive relief had been rendered moot by the performance of the contract, we nevertheless found that there was a "live claim for attorney's fees" under the Declaratory Judgments Act that remained pending, because the DJA allows for an award of fees in the court's discretion regardless of whether a party prevailed.  *Labrado*, 132 S.W.3d at 589, 590.  In the present case, however, Plaintiffs eliminated by amendment their request for attorney's fees under the Declaratory Judgments Act.  Consequently, this aspect of the holding in *Labrado* is not applicable.

nothing to suggest that Plaintiffs would be subject to the same violations in the future. Therefore unlike *Labrado*, the contract in question was not "capable of repetition."

We therefore conclude that because the contract at issue has been fully performed, Plaintiffs' claims against the City for declaratory relief and for an injunction under Section 252.061 are moot and must be dismissed.[11]

## Plaintiffs' Claims Against the Mayor and City Council for Ultra Vires Act

Plaintiffs alleged that the Mayor and City Council (the "City Officials") committed an "ultra vires act" when they voted to award the contract to Team Eagle because they had no authority to award the contract to a bidder who was not the lowest responsible bidder in violation of Chapter 252. In Issue Five, the City asserts that the "ultra vires acts" claim should be dismissed for lack of subjection-matter jurisdiction because the City Officials acted within their discretion and with full legal authority when they voted to award the contract award to Team Eagle. We conclude Plaintiffs' ultra vires claims against the City Officials should be dismissed because the underlying contract has been fully performed and the ultra vires exception to the City Officials' immunity allows for prospective relief only.

### *The Ultra Vires Exception to Immunity Allows only Prospective Relief*

---

[11] Having determined Plaintiffs' claims against the City are moot, we decline to address the City's argument that Plaintiffs failed to exhaust their administrative remedies by allegedly failing to follow certain procedural steps to contest the contract award set forth in the bid solicitation (Issue Two). We do note, however, that that the City did not prove up procedural steps contained in the solicitation, and we note our disagreement with the City's argument that those procedural steps are the equivalent of legislatively-created "administrative remedies," which must be exhausted. Further, we note that Chapter 252 does not contain any provisions requiring a plaintiff to pursue any administrative remedies before filing suit under Section 252.061. *See, e.g., Larsen v. Santa Fe Indep. Sch. Dist*., 296 S.W.3d 118, 126 (Tex.App. – Houston [14th Dist.] 2009, pet. denied) (holding that Chapter 451 of the Texas Labor Code did not contain any language expressing an intent to create an exhaustion requirement); *see also Stauffer v. City of San Antonio*, 162 Tex. 13, 18, 344 S.W.2d 158, 161 (1961) (since the Legislature did not confer the power to hear and determine issue of employee's reinstatement upon some other tribunal, the district court has jurisdiction to decide the same).

A lawsuit against a government actor in his official capacity is effectively a suit against the entity, and the actor therefore has the same immunity enjoyed by the entity unless he has acted "ultra vires." *Univ. of Texas Health Sci. Ctr. at San Antonio v. Bailey,* 332 S.W.3d 395, 401 (Tex. 2011); *City of El Paso v. Heinrich,* 284 S.W.3d 366, 380 (Tex. 2009) (with the limited exception for ultra vires acts, government immunity protects government officers sued in their official capacities to the extent that the governmental entity is protected as well). The ultra vires exception to governmental immunity permits a plaintiff to seek relief against a government actor who allegedly has violated statutory or constitutional provisions by acting without legal authority or by failing to perform a purely ministerial act. *See Heinrich,* 284 S.W.3d at 372–73. To fall within this *ultra vires* exception to immunity, a suit must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act. *Id.* at 371. The proper defendant in the ultra vires action is the government official himself "whose acts or omissions allegedly trampled on the plaintiff's rights, not the state agency itself." *Texas Dept. of Trans. v. Sefzik,* 355 S.W.3d 618, 621 (Tex. 2011) (citing *Heinrich,* 284 S.W.3d at 372–73).

Although suits for contract damages against a governmental *entity* are generally barred by immunity, when a statute or the constitution "requires that government contracts be made or performed in a certain way, leaving no room for discretion, a suit alleging a government *official's* violation of that law is not barred, even though it necessarily involves a contract." *Heinrich*, 284 S.W.3d at 371. However, even though the ultra vires doctrine may allow a party to bring a lawsuit against a governmental official, because the suit is still effectively against the governmental entity itself, the remedies available must be limited so as not to implicate the doctrine of governmental immunity. *Id.* at 373-75. Thus, in an ultra vires action, a plaintiff may not seek money damages,

26

and further the plaintiff may seek only "prospective" rather than "retrospective remedies." *Id.* (citing *Edelman v. Jordan,* 415 U.S. 651, 668, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (under federal immunity law, claims for prospective injunctive relief are permissible, while claims for retroactive relief are not, because such an award is "in practical effect indistinguishable in many aspects from an award of damages against the State")).

For example, in *Heinrich*, the plaintiff sued the Board of Trustees of a city pension fund, claiming, among other things, that the Board had improperly reduced her monthly pension payments in violation of a state statute. *Id.* at 369. The Supreme Court concluded that the plaintiff was entitled to bring an ultra vires claim against the board members for their actions, which were allegedly made without legal or statutory authority. However, the Court held that the plaintiff's only remedy was a "prospective" one to prevent the board members from acting unlawfully in the future, and that she therefore could not seek retrospective relief to recover funds that the board members had wrongfully withheld in the past. *Id.* at 380. The Court's ruling amounted to a proclamation that in an ultra vires action a plaintiff is only "entitled to prospective injunctive relief, as measured from the date of injunction." *Id.* at 376; *see City of Houston v. Williams,* 216 S.W.3d 827, 829 (Tex. 2007) (per curiam) (court had no jurisdiction to hear the claims of retired firefighters seeking a declaratory judgment that the city had violated statute improperly calculating termination pay because "[t]he only injury the retired firefighters allege has already occurred, leaving them with only one plausible remedy—an award of money damage[s]," which is not permitted in a lawsuit against a governmental entity).[12]

---

[12] *See also City of Round Rock v. Whiteaker*, 241 S.W.3d 609, 633–34 (Tex.App. – Austin 2007, pet. denied) (approving, under *Williams,* the dichotomy between declaratory and injunctive claims regarding past statutory violations and those seeking only to compel the city to follow the law in the future, holding that the government was immune from suit for the former but not the latter); *Bell v. City of Grand Prairie,* 221 S.W.3d 317, 325 (Tex.App. –

***Plaintiffs' Claims Against the City Officials Seek Prospective Relief***

In support of their argument that the ultra vires doctrine permits them to bring a claim for declaratory and injunctive relief against the City officials, Plaintiffs rely primarily on *Texas Highway Comm'n v. Texas Ass'n of Steel Importers, Inc.,* 372 S.W.2d 525 (Tex. 1963). In that case, the plaintiffs brought a lawsuit against the Texas Highway Commission and its Commissioners, seeking a judgment declaring a minute order issued by the Commission to be "invalid, illegal, void and of no lawful effect." *Id.* at 530. The minute order stated that all construction contracts with the agency were to include a provision that materials furnished under the contract were manufactured in the United States, its territories, and possessions. *Id*. at 526. The Court agreed with the plaintiffs that the minute order violated the competitive bidding statute, and that the parties clearly had the "right and litigable interest to have the challenged Minute Order declared null and void." *Id*. at 531.

Plaintiffs assert that under *Steel Importers,* they too have a right to bring a lawsuit for declaratory and injunctive relief against the City Officials challenging their authority to award the contract awarded to Team Eagle. Various courts have recognized, however, that *Steel Importers* was not a suit to invalidate or void an already-performed contract, and was instead a suit to declare a state agency's administrative order void. *See, e.g., Satterfield & Pontikes Constr., Inc. v. Texas S. Univ.,* 472 S.W.3d 426, 432-33 (Tex.App. – Houston [1st Dist.] 2015, pet. filed) (plaintiff's allegations all centered on past violations of an already-completed contract, thus distinguishing it from the "ongoing violations at issue in *Steel Importers*").

---

Dallas 2007, no pet.) (holding that, under *Williams,* firefighters' requested declaration regarding past statutory violation was barred, but to the extent the requested declaration concerned future violations, the claim was not barred).

The importance of this distinction was explained by our sister court in *Texas Logos, L.P. v. Texas Dept. of Transp.,* 241 S.W.3d 105 (Tex.App. – Austin 2007, no pet.), in which a losing bidder brought a suit against both the Texas Department of Transportation and the Department's executive director, seeking a declaration that the Department had violated the competitive bidding requirements set forth in the State Purchasing and General Services Act when it awarded a "logo sign" contract to another bidder. The court recognized that sovereign immunity does not protect a government official from a lawsuit seeking to require him to *prospectively* comply with a statute, as the plaintiffs sought to do in *Steel Importers. Id.* at 114. However, the court noted that, unlike challenges to a government official's authority to enact a standing order, which has ongoing implications, it is "well-established" that claims against a government official seeking to "establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities are suits against the State," and thereby invoke the principles of sovereign immunity. *Id.* at 119-20. While acknowledging that the losing bidder on a state contract might have had a valid claim for declaratory or injunctive relief against the Department officials if it had been able to allege that the officials were committing *ongoing* statutory violations in the logo sign procurement process, the plaintiff was only alleging "*past* statutory violations," for which the only plausible remedy was the invalidation of the contract, which was barred by the doctrine of sovereign immunity. *Id.* at 122-23; *see Satterfield & Pontikes Constr., Inc.*, 472 S.W.3d at 435-36 (claims of the losing bidder for a contract with a state university for the construction of student housing facility, which sought declaratory relief against the university officials for alleged ultra vires actions in awarding the contract in violation of bidding requirements in the Texas Education Code, were barred by sovereign immunity depriving the court of subject-matter jurisdiction,

29

because the construction project was already in an "advanced state" of completion, making plaintiff's request for declaratory judgment voiding the contract moot and a claim only for retrospective relief, which was unavailable in an ultra vires action).

Similarly in the present case, the parties have acknowledged that the City's contract with Team Eagle has already been fully performed and that full payment has been made by the City to Team Eagle under the terms of the contract. Given the performance of the contract, the City Officials are not committing any ongoing violations of competitive bidding requirements of Chapter 252 of the Local Government Code, and Plaintiffs are no longer in a position to seek prospective injunctive relief against the City Officials requesting that they be required to comply with the requirements of that Code in awarding the contract to Team Eagle. Instead, the only relief Plaintiffs could possibly ask for at this time is a declaration that an already-performed contract is void, a remedy that is not only moot, but is retrospective in nature and therefore not permitted in an ultra vires action. Accordingly, we conclude that the ultra vires exception to the doctrine of sovereign immunity does not apply to Plaintiffs' claims against the City Officials, and that the trial court is without subject-matter jurisdiction to hear those claims.

## CONCLUSION

We reverse the trial court's order denying the City's plea to the jurisdiction and dismiss with prejudice all claims that Waterblasting Technologies, Inc. and Thomas G. Wicker, Jr. asserted against the City of El Paso, the Mayor, and the City Representatives.

STEVEN L. HUGHES, Justice

April 13, 2016

Before McClure, C.J., Rodriguez, and Hughes, JJ.

30