COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| COCKRELL INVESTMENT PARTNERS, L.P., | § | |
| | § | No. 08-21-00017-CV |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | 112th District Court |
| MIDDLE PECOS GROUNDWATER CONSERVATION DISTRICT, JERRY McGUAIRT in his Official Capacity as President of Middle Pecos Groundwater Conservation District, FORT STOCKTON HOLDINGS, L.P., and REPUBLIC WATER COMPANY OF TEXAS, LLC, | § | of Pecos County, Texas |
| | § | (TC# P-12176-112-CV) |
| | § | |
| | § | |
| Appellees. | § | |

**O P I N I O N**

Appellant, Cockrell Investment Partners, LP (Cockrell), appeals the trial court's judgment, which granted appellees' pleas to the jurisdiction, and dismissed its underlying claims. Appellees are Middle Pecos Groundwater Conservation District (the District), Jerry McGuairt, in his official capacity as president of the District, Fort Stockton Holdings, L.P. (FSH), and Republic Water Company of Texas, LLC (Republic). By its suit, Cockrell sought judicial review of the District's order denying it party status to two groundwater permit applications filed by FSH. Although not a

party to the applications, Republic was granted party status and it supported issuance of the permits. Additionally, Cockrell also sought declaratory relief and ultra vires claims against McGuairt. Appellees all filed pleas to the jurisdiction alleging Cockrell failed to establish a valid waiver of immunity as to each claim. We affirm the trial court's judgment.

## I. BACKGROUND

### A. The parties

The Middle Pecos Groundwater Conservation District is a conservation and reclamation district created under Article XVI, Section 59 of the Texas Constitution. *See* TEX. CONST. art. XVI, § 59. A district of this type operates pursuant to Chapter 36 of the Texas Water Code. TEX. WATER CODE ANN. §§ 36.001–36.457. Chapter 36 grants such districts authority to regulate the spacing of water wells, the production from water wells, or both. *Id*. § 36.001(1). In regulating groundwater, the District governs permitting for drilling, equipping, operating, or completing wells. *Id*. §§ 36.113(a), .114, .401–.418. Generally, the District issues two types of permits: (1) historic and existing use permits (H&E permits); and (2) production permits.

Cockrell owns a property, known as "Belding Farms," located in Pecos County. In 2006, the District granted Cockrell an H&E permit for 16 wells, allowing annual production of 15,528.846-acre feet of groundwater pumping, for the purposes of supplying water and irrigation requirements for a pecan orchard. Cockrell's permit allows annual groundwater pumping from three different aquifers: approximately 1,800-acre feet from the Capitan Reef Aquifer, approximately 7,800-acre feet from the Rustler Aquifer, and 5,880-acre feet from the Edwards-Trinity Aquifer.

Similarly, FSH owns a property in Pecos County, located west of Fort Stockton, covering approximately 18,000 acres of land. In 2005, the District issued an H&E permit to FSH allowing

the annual production of 47,418-acre feet of groundwater from the Edwards-Trinity Aquifer, also for agricultural purposes. Cockrell's property and FSH's are located directly adjacent to each other, sharing common boundaries on the north, west, and south sides of Cockrell's property.

Lastly, Republic is a limited liability company doing business in Pecos County, and a lessee of a portion of FSH's groundwater.[1]

## B.  FSH's permit application

On July 13, 2009, FSH submitted to the District a production permit application seeking the right to produce and export 47,418-acre feet of groundwater per year from the Edwards-Trinity Aquifer for municipal and industrial purposes. The District issued public notice of a hearing on the application. Multiple parties appeared to contest and protest FSH's permit application. Several protestants were admitted as parties to the contested hearing that followed on FSH's permit application. Cockrell, however, neither participated in the preliminary hearing or otherwise requested party status to the proceedings.

In 2011, the District denied FSH's application. After exhausting administrative remedies, FSH filed suit against the District in the trial court.[2] The trial court granted summary judgment in favor of the District, affirming its denial of FSH's permit application. Although FSH appealed that ruling to this Court, the parties later entered a settlement and, pursuant to their agreement, they filed a joint motion to vacate the trial court's judgment without regard to the merits and remand to the District for further proceedings, which we granted. *See Fort Stockton Holdings, L.P. v. Middle Pecos Groundwater Conservation Dist.*, No. 08-15-00382-CV, 2017 WL 2570934, at *1 (Tex. App.—El Paso June 14, 2017, no pet.) (mem. op.).

---

[1] Republic filed a letter with this Court stating it did not intend to file an Appellee's Brief.

[2] The first appeal from this dispute dealt with issues unrelated to the issue now before this Court. *See Pecos County v. Fort Stockton Holdings, L.P.*, 457 S.W.3d 451, 458 (Tex. App.—El Paso 2014, no pet.).

## C. Republic's permit application

In March 2016, Republic—an entity not involved in FSH's 2009 permit application—filed an application with the District seeking a production permit to produce approximately 28,454-acre feet of groundwater from the same property and wells that FSH had listed in its 2009 application. The District initially granted a motion to abate the application because it concerned the same property and wells as FSH's application, which was then pending appeal. Then, at a subsequent hearing, the District granted a motion declaring Republic's application administratively incomplete, but it also kept the abatement in place. Republic then filed a petition for writ of mandamus against the District in the 112th District Court of Pecos County.[3] In October 2016, the trial court granted the District's plea to the jurisdiction against Republic's petition seeking mandamus relief, which it then appealed to this Court.[4] After the parties again reached a settlement of their dispute, we granted Republic's motion to dismiss the appeal. *See Republic Water Co. of Texas, LLC v. Middle Pecos Groundwater Conservation Dist.*, No. 08-17-00001-CV, 2017 WL 3326784, at *1 (Tex. App.—El Paso Aug. 4, 2017, no pet.) (mem. op.).

On November 15, 2016, the District held a public hearing on Republic's application. At the hearing, the District granted party status to multiple entities including Cockrell. In April 2017, after referral to the State Office of Administrative Hearings, the application was set for a preliminary hearing on May 18, 2017.

---

[3] For our purposes, it remained unclear from each parties' recitation of facts to what extent Republic had appealed to the trial court and to this Court. However, we may take judicial notice of the record and judgment in a connected or related case. *State ex rel. City of Colleyville v. City of Hurst*, 519 S.W.2d 698, 701 (Tex. App.—Fort Worth 1975, writ ref'd n.r.e.). Our review of the appellate record for Republic's appeal shows Republic filed a request for issuance of mandamus requesting the trial court direct the District to withdraw its order of abatement and enter an order setting a preliminary hearing on its permit application.

[4] Republic also filed a lawsuit in federal court.

**D. The parties' settlement**

In April 2017, the District, FSH, and Republic, collectively reached a settlement agreement. To protect aquifer levels, FSH agreed to modify its 2009 permit application, reducing its request from 47,418-acre feet to 28,400-acre feet, and further agreed to accept other permit conditions that restricted its permit rights. Related to the agreement, FSH also agreed to apply for an amendment of its H&E permit, surrendering 28,400-acre feet of the 47,418-acre feet authorized by that permit. In turn, Republic agreed to withdraw its application, move to dismiss its appeal, and to pay the District its court costs and attorneys' fees for its pending suit. The District and FSH then filed a joint motion to dismiss FSH's appeal then pending in this Court. *Fort Stockton Holdings, L.P.*, 2017 WL 2570934, at *1. This Court granted the motion, vacating the trial court's judgment upholding the District's original denial of FSH's application and remanded the matter back to the District for further proceedings as provided for by the settlement agreement. *Id.*

As agreed, FSH then submitted an "Amended" permit application to the District. The terms included in the original 2009 application were lined out and replaced with new information. FSH reduced its request for production from 47,418-acre feet to 28,400-acre feet. FSH also filed a second application titled, "Application to Amend H&E Use Permit(s)," requesting a reduction of its original 2005 H&E permit by 28,400-acre feet. For the first time, Cockrell requested party status to "any hearing on [FSH's] Application for Production Permit and Transport Authorization on Remand from the El Paso Court of Appeals," and "any hearing on the Application to Amend Historic and Existing Use Permitted filed by [FSH]."

**E. Permit Hearing**

On July 18, 2017, the District held a hearing on both applications. As to the 2009 application, the meeting minutes reflect the hearing was held following a remand from this Court. As earlier stated, FSH's application sought a permit to produce and beneficially use 28,400-acre

5

feet of Edwards-Trinity Aquifer groundwater from wells on its property for municipal, industrial, or agricultural purposes. Consistent with its written requests, Cockrell appeared and requested party status. Cockrell argued it "[has] a justiciable interest and feels . . . this remand hearing is essentially a new hearing," stating its operation would "obviously" be affected or the proposed permit "could affect" the long-term operation of its own permit. FSH opposed Cockrell's request for party status, stating in relevant part:

> 1) Cockrell's interest in Belding Farms had notice at the time through mail and other publication, and through personal knowledge since Glenn Honaker was the President of [the District] Board as well as the Manager for Cockrell's Belding Farms. 2) [The District] rule 11.10.4 says that the time to request party status is at the time of the initial hearing and that was more tha[n] 6 years ago. 3) They have offered nothing in the record, and anything offered now would be extra outside of the record. 4) The representation that there is a substantial interest in the permit is over-stated because only about half of their wells are Edwards/Trinity wells. 5) The ruling that the Board has made and has agreed to the settlement agreement will be protective to all the permittees and groundwater pumpers throughout the District that could be affected.

The attorney for the board of directors of the District advised that Cockrell had been afforded due process as he was given adequate notice, both formally and informally. The board attorney indicated he would characterize the hearing as a continuation of an existing hearing. He advised the board that Cockrell had "missed the boat." Minutes of the meeting reflect that Cockrell was denied party status by the District's board.

As to FSH's application to amend its H&E permit, the minutes further indicate that FSH requested a reduction of 28,400-acre feet of its existing productions rights and for it to retain the remaining acre feet of its H&E permit for agricultural use on its own property. Again, Cockrell appeared, requesting party status to this application as well. Cockrell stated it was concerned about not being part of the process, it would like to be a part of changes made to the permit, and it would like a "seat at the table." In response, FSH argued there was no evidence submitted as to the adverse

6

harm or justiciable interest that would be affected by FSH giving up 28,400-acre feet of groundwater production by amending the permit. The General Manager of the District next stated:

> We are dealing with an application asking for a substantial reduction, and the General Manager does not believe the request affects those seeking party status in any way that injures them or that they would have a request for relief that the Board can grant to address any adverse effect. Therefore, the General Manager's position is we should declare this uncontested and not grant them party status.

Cockrell was next permitted to clarify its argument on how the amendment of the permit would affect it as a property owner. Cockrell responded: "We would like a seat at the table going forward. Obviously[,] them giving up 28,400-acre feet, this is a different type of permit. We understand the implications of it, and we want to be involved." The District denied Cockrell party status and declared the application uncontested.

The District then granted both permit applications as follows:

1. The Board grant [FSH's] application to surrender 28,400-acre feet of Historical and Existing Use production rights from specific wells and in reduced production volumes listed in FSH's application;

2. The Board grant FSH's application for a production permit and transport authorization to produce and beneficially use 28,400-acre feet of Edwards-Trinity Aquifer groundwater to be withdrawn from wells on FSH-owned (not leased) properties for municipal, industrial, and/or agricultural purposes within and outside the District. This permit is subject to the special conditions recommended by the General Manager governing production restrictions based on aquifer-level triggers in certain wells and adoptions of a water conservation plan.

On July 28, 2017, Cockrell filed a "Request for Reconsideration" on the District's denial of party status as to both applications. The District did not rule on the reconsideration request.

Following the hearings, Republic filed a motion to dismiss its appeal in this Court. *See Republic Water Co. of Texas, LLC v. Middle Pecos Groundwater Conservation Dist.*, 2017 WL 3326784, at *1. We granted the motion and dismissed the appeal. *Id.* Republic also withdrew its own permit application filed with the District.

## F. Suit against the District

Cockrell next filed the underlying lawsuit against the District. By its petition, Cockrell contested the District's orders whereby it was denied party status regarding FSH's two permit applications. Cockrell sought a reversal of the District's denial of such status and a remand of the applications for further proceedings. The District filed a plea to the jurisdiction asserting Cockrell lacked standing to participate in the permit hearings, to request a contested hearing, or to bring an appeal. The District further asserted Cockrell failed to show a waiver of governmental immunity as it failed to exhaust administrative remedies. Cockrell later filed a second amended petition adding party defendants to include Jerry McGuairt, the District's board president, named in his official capacity, as well as adding FSH and Republic, and requested a declaratory judgment invalidating the settlement agreement as a prohibited "Mary Carter" agreement. Against McGuairt, Cockrell alleged he had committed ultra vires acts. McGuairt, FSH, and Republic all filed responsive pleadings, including pleas to the jurisdiction, containing similar arguments to that of the District's. McGuairt's also addressed Cockrell's UDJA claim.

A hearing on the plea to the jurisdiction was held on December 17, 2020. The trial court heard argument from Cockrell, the District, and FSH. At the conclusion of arguments, the trial court granted the parties' pleas to the jurisdiction. The trial court later signed a written order granting the pleas to the jurisdiction and dismissed Cockrell's claims against all defendants. This appeal followed.

## II. PLEAS TO THE JURISDICTION

Cockrell brings three issues on appeal, all challenging the trial court's grant of pleas to the jurisdiction. The first two issues pertain to the plea against Cockrell's various claims brought against the District, while the third issue centers solely on the plea against Cockrell's ultra vires

claim against district board president, Jerry McGuairt. We address all three issues, ordered by the nature of the claims asserted as against the respective appellees.

## A. Standard of review

### 1. Plea to the jurisdiction

A plea to the jurisdiction is a dilatory plea challenging the trial court's subject matter jurisdiction over a pleaded cause of action. *Texas Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Its purpose is "to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). When a defendant's plea to the jurisdiction challenges the plaintiff's pleadings, we determine whether the plaintiff has alleged facts affirmatively demonstrating the trial court's jurisdiction to hear the cause. *Id.* at 227; *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Miranda*, 133 S.W.3d at 227. "If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend." *Id.* at 226–27. When the plaintiff's pleadings are not capable of being amended in a way that would cure the pleading insufficiency, we are required to dismiss the suit with prejudice. *Harris County v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004).

When a jurisdictional plea challenges the existence of jurisdictional facts with supporting evidence, the standard of review mirrors that of a traditional motion for summary judgment. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 771 (Tex. 2018). "[A]fter the state asserts and supports with evidence that the trial court lacks subject matter jurisdiction, we simply require the plaintiffs, when the facts underlying the merits and subject matter jurisdiction are intertwined, to show that there is a disputed material fact regarding the jurisdictional issue." *Miranda*, 133 S.W.3d

9

at 228. When reviewing a jurisdictional plea in which evidence implicating the merits of the case has been submitted, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Id.* But, in doing so, "we cannot disregard evidence necessary to show context, and we cannot disregard evidence and inferences unfavorable to the plaintiff if reasonable jurors could not." *Clark*, 544 S.W.3d at 771.

We review de novo both the question of whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction and whether undisputed evidence of jurisdictional facts established a trial court's jurisdiction. *Miranda*, 133 S.W.3d at 226. Where disputed evidence of jurisdictional fact implicates the merits of the case, such case may require resolution by a fact finder. *Id.*

### 2. Statutory construction

We strictly construe statutes waiving sovereign and governmental immunity. *City of Houston v. Jackson*, 192 S.W.3d 764, 770 (Tex. 2006). "[A] statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language." TEX. GOV'T CODE ANN. § 311.034; *see also Castillo v. Texas Bd. of Pro. Eng'rs*, No. 03-10-00124-CV, 2010 WL 5129127, at *2 (Tex. App.—Austin Dec.14, 2010, no pet.) (mem. op.). We construe the text of a statute to ascertain and give effect to the legislature's intent. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009). Generally, "[w]here text is clear, text is determinative of that intent." *Id.* This rule applies unless enforcing the plain language of the statute would produce absurd results. *Id.*

### B. Governmental immunity

A groundwater district is a political subdivision of the State of Texas created under Article XVI, Section 59 of the Texas Constitution. *See* TEX. CONST. art. XVI, § 59; TEX. WATER CODE ANN. §§ 36.001(1), 36.001(15), 36.011(a). Sovereign immunity protects the State from

10

lawsuits for money damages. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). As a political subdivision, the District is entitled to this same immunity, referred to as governmental immunity in such an instance, unless immunity has otherwise been waived by the legislature. *Pecos County v. Fort Stockton Holdings, L.P.*, 457 S.W.3d 451, 453 (Tex. App.—El Paso 2014, no pet.) (citing *Reata*, 197 S.W.3d at 374); *see also Lone Star Groundwater Conservation District v. City of Conroe*, 515 S.W.3d 406, 412–13 (Tex. App.—Beaumont 2017, no pet.) ("Like other governmental entities, groundwater districts have governmental immunity unless the Legislature has waived the district's right to governmental immunity.").

When suing a governmental entity and its officials, a plaintiff must file pleadings affirmatively demonstrating the trial court's jurisdiction by alleging a valid waiver of immunity. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). Additionally, all statutory prerequisites to a suit are jurisdictional requirements and a suit against a governmental entity can only be brought in the manner indicated by the applicable statute. *Texas Dep't of Transp. v. York*, 284 S.W.3d 844, 846 (Tex. 2009).

## C. The water code claim

In its first issue, Cockrell asserts the trial court erred in granting the District's plea to the jurisdiction given the statutory waiver of immunity applicable under the facts pled in its second amended petition. And it further argues it satisfied administrative requirements before filing suit as required to support its claim. Related to the first issue, Cockrell's second issue argues that questions of fact remain regarding the jurisdictional issues of the claim.

Cockrell pleaded the District's immunity was waived based on § 36.251(a) of the Texas Water Code. Section 36.251 provides that a suit can be brought against a groundwater district in the following instances:

11

(a) A person, firm, corporation, or association of persons affected by and dissatisfied with any rule or order made by a district, including an appeal of a decision on a permit application, is entitled to file suit against the district or its directors to challenge the validity of the law, rule, or order.

(b) Only the district, the applicant, and parties to a contested case hearing may participate in an appeal of a decision on the application that was the subject of that contested case hearing. An appeal of a decision on a permit application must include the applicant as a necessary party.

(c) The suit shall be filed in a court of competent jurisdiction in any county in which the district or any part of the district is located. The suit may only be filed after all administrative appeals to the district are final.

Tex. Water Code Ann. § 36.251.

Pursuant to this provision, any person, firm, corporation, or association of persons, "affected by and dissatisfied with" a district's rule or order, is entitled to file suit against the district or its director to challenge the validity of the law, rule, or order. *Id.* § 36.251(a). But only the district, the applicant, and parties to a contested case hearing may participate in an appeal of the district's decision following a contested case hearing. *Id.* § 36.251(b). And finally, the suit may only be filed after all administrative appeals to the district are final. *Id*. § 36.251(c).

### 1. The parties' arguments

In July 2017, following this Court's remand to the district, Cockrell appeared at the District's hearing requesting party status as to both of FSH's permit applications then pending, that is, the 2009 application and the 2017 application to amend the H&E permit. On appeal, Cockrell asserts it affirmatively pled claims against the District's decisions on these applications and these claims squarely fit within the administrative appeal authorized by § 36.251 of the Water Code. First, as to FSH's 2009 permit application, it asserts it qualifies as a person dissatisfied with the District's decision denying it party status. And second, at to FSH's 2017 application requesting reduction of the H&E permit, it asserts it was dissatisfied with the District and president's decision

12

to enter into a settlement agreement. Cockrell argues a waiver of immunity applies to the decisions related to both permit applications.

In response, the District urges that Cockrell appeared over seven years late in seeking party status on the 2009 application; and it lacked standing to contest the 2017 application amending an existing permit. As to the 2009 permit application, the District argues that Cockrell's request for party status was not timely as it should have been made at the preliminary hearing held in 2010. It argues the 2017 hearing merely continued the District's consideration of the 2009 permit application after the case was remanded by this Court.[5] As for the 2017 application requesting an amendment of the H&E permit, the District also opposed party status, arguing that Cockrell lacked standing in that it failed to establish a justiciable interest. Replying, Cockrell argues it's request for party status was timely as FSH's "Amended Application" should be considered a new permit application, one materially different from the application originally sought in 2009. As to the more recent 2017 application, Cockrell argues its justiciable interest was established as it contested the District's and president's decision to enter into a settlement agreement that affected its rights.

In either event, we initially conclude these arguments address the application decisions on their merits.[6] And yet, a trial court's subject matter jurisdiction of an administrative denial decision is not implicated unless jurisdictional prerequisites are met before judicial review is sought. *End*

---

[5] Cockrell ignores—in its pleadings, responses, and briefs to this Court—the disposition of FSH's appeal by this Court. *See Fort Stockton Holdings, L.P.*, 2017 WL 2570934, at *1 (vacating the trial court's affirmance of the District's original order denying FSH's 2009 application and remanding the case to the District for a remand hearing on the request based on the settlement). Cockrell repeatedly contends that the denial of FSH's 2009 application was final after the trial court affirmed the District's denial, disregarding the fact that this Court vacated that decision.

[6] The District and FSH both assert that Cockrell failed to demonstrate a concrete and particularized interest in FSH's permit applications before the District. Cockrell responds that the argument is circular in that the appellees assert Cockrell lacks standing before the trial court because he failed to establish standing before the District during the permit application hearings. Even assuming that appellees properly challenged Cockrell's standing to file the underlying suit with the trial court, we need not address these arguments because the jurisdictional question is dispositive of this appeal. *End Op, L.P. v. Meyer*, No. 03-18-00049-CV, 2018 WL 4102013, at *2 (Tex. App.—Austin Aug. 29, 2018, no pet.) (mem. op.).

*Op, L.P. v. Meyer*, No. 03-18-00049-CV, 2018 WL 4102013, at *2 (Tex. App.—Austin Aug. 29, 2018, no pet.) (mem. op.) (citing TEX. WATER CODE ANN. § 36.251(c)). Consequently, before we may resolve the dispute over whether Cockrell timely sought party status as to the 2009 application, or whether it established a justiciable interest in the 2017 application, we first must consider whether statutory prerequisites were met as to both denial decisions.

### 2. The requirement to exhaust administrative remedies[7]

As earlier stated, § 36.251 provides that a suit against a district "may only be filed after all administrative appeals to the district are final." TEX. WATER CODE ANN. § 36.251(c). Two other provisions of Chapter 36 further address the time when a district decision becomes final. First, § 36.413(a) provides that a decision by a district on a permit or permit application becomes final: (1) if, after the expiration of the period to file a request for rehearing, a request for rehearing is not filed on time; or (2) if the request for rehearing is filed on time, on the date the board denies the request or renders a decision after rehearing. *Id.* § 36.413(a). Next, subsection (b) provides that a suit may be filed against the district to appeal a decision on a permit or permit application not later than the 60th day after the decision becomes final. *Id.* § 36.413(b). But subsection (c) also requires

---

[7] We note that Cockrell asserts the District abandoned, in its amended plea to the jurisdiction, its argument challenging the timeliness of Cockrell's challenge to the denial of party status. Cockrell cites to several Texas cases asserting its amended plea to the jurisdiction did not contain the timeliness argument. *In re Mathes*, Nos. 03-20-00379-CV, 03-20-00441-CV, 2020 WL 7063684, at *2 (Tex. App.—Austin Dec. 3, 2020, no pet.) (mem. op.) (finding argument based on COVID-19 pandemic procedures was waived in a transfer of venue case when argument abandoned in subsequent responses); *City of Garland v. Allen*, No. 05-94-01374-CV, 1995 WL 500214, at *5 (Tex. App.—Dallas Aug. 18, 1995, writ denied) (not designated for publication) (finding argument on constitutionality of statute abandoned in amended answer). However, we conclude the cited cases are inapposite. None of these authorities concern waivers of governmental immunity. Additionally, because such immunity implicates a court's subject matter jurisdiction, and an exhaustion of administrative remedies is further required, the timeliness of Cockrell's request for party status would remain at issue. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 96 (Tex. 2012) ("[R]egardless of whether immunity equates to a lack of subject-matter jurisdiction for all purposes, it implicates a court's subject-matter jurisdiction over pending claims. So[,] if a governmental entity validly asserts that it is immune from a pending claim, any court decision regarding that claim is advisory to the extent it addresses issues other than immunity, and the Texas Constitution does not afford courts['] jurisdiction to make advisory decisions or issue advisory opinions."). Additionally, the question of timeliness goes to the jurisdictional prerequisites needed to invoke the trial court's jurisdiction which can be addressed.

that "[a]n applicant or a party to a contested hearing may not file suit against the district under Section 36.251 if a request for rehearing was not filed on time." *Id.* § 36.413(c).

The deadline for filing a request for rehearing is set forth in § 36.412(a). To that end, a request for rehearing must be filed not later than the 20th calendar day after the date of the district's decision. *Id.* § 36.412(a). After the request for rehearing is filed, (1) the district, if it grants the request for rehearing, shall schedule the rehearing not later than the 45th day after the request is granted, or (2) if it takes no action, the request will be denied on "the 91st day after the date the request is submitted." *Id.* § 36.412(d), (e).

Here, Cockrell's two requests for party status—first, on FSH's amended 2009 permit application, and second, on its 2017 application to amend its H&E use permit—were both filed on July 14, 2017. Cockrell also attended the evidentiary hearing held on July 18, 2017. On that date, the District denied Cockrell's requests as to both applications. On July 28, 2017, Cockrell then filed a request for reconsideration of the District's denial of its two requests for party status. This reconsideration request was made 10 days after the district's decisions pertaining to both applications, well within the required 20 days. *Id.* § 36.412(b). At this point, the District could either (1) timely grant the reconsideration request and schedule the rehearing not later than the 45th day after the request was granted, or (2) if it took no action for 90 days, the request would be denied on "the 91st day after the date the request is submitted." *Id.* § 36.412(d), (e). Given that Cockrell filed its request for reconsideration on July 28, 2017, the District had until October 27, 2017, to grant or deny the reconsideration requests. *Id.* But in this case, before the District ruled on those requests or before they were otherwise denied by operation of law, Cockrell filed suit in the trial court on October 10, 2017.

Cockrell argues that, because it followed the District's own adopted rule and § 36.251(c)

15

of the Water Code, it exhausted administrative remedies before filing suit. First, it argues that local rule 4.9 required the filing of a request for reconsideration within 20 days of the date of the District's denial decision, and if that request is not ruled on after 45 days, it is overruled by operation of law. Cockrell argues in this instance that the District's reconsideration request was overruled after the 45th day. [8] In short, Cockrell contends it timely filed a request for reconsideration within 20 days of the District's decision, and the reconsideration was overruled by operation of law as of September 11, 2017. Because it filed its underlying lawsuit on October 10, 2017, it argues it did so within 30 days from the date the decision became final. To that extent, Cockrell contends its suit was timely filed after administrative remedies were exhausted. In addition to citing to the District's local rules, Cockrell also cites to two other provisions of the Water Code in support of the finality of the District's decision, § 36.251 (regarding suits against districts) and § 36.413 (determining when a district decision is final). We disagree with these arguments for several reasons.

First, local rule 4.9 of the District's adopted rules does not apply to these circumstances. Rule 4.9 provides that it concerns "any matter not covered under any other section of these rules[.]"[9] Because Chapter 36 of the Water Code governs the permit application process as well as district decisions made within the process, rule 4.9 does not control over statutory provisions. *See generally* TEX. WATER CODE ANN. ch. 36. Moreover, the version of the District's local rule that Cockrell points to was adopted in June 2018, or after this suit had already been filed in the trial court. The rule in place at the time of the denial decision differs from the version cited by Cockrell. Rather, the rule in effect at the relevant time provided that a request for reconsideration was

---

[8] Rule 4.9, Middle Pecos Groundwater Conservation (June 19, 2018), https://www.middlepecosgcd.org/pdf/rules/2018/MPGCD%20Rules%20adopted%20June%2019%202018.pdf?_t=1536326104.

[9] *Id.*

16

deemed overruled by operation of law after 90 days, not 45 days as is provided by the later-adopted rule.[10] Consequently, even if rule 4.9 controlled under these circumstances, which we determine it does not, Cockrell's filing of its lawsuit occurred before the decision became final.

Second, Cockrell fails to point us to any authority showing it is exempt from following the administrative remedies laid out by the applicable statutory scheme. The Water Code does not carve out an exception or different process for persons denied party status who appeal the district's denial decision. Given that § 36.251 requires administrative appeals to be final before the jurisdiction of a trial court is invoked, these prerequisites apply equally to persons dissatisfied with party status or justiciability decisions. *Id.* § 36.251(c).

To file suit against a district regarding decisions made on permit applications, the administrative remedies laid out by Chapter 36 of the Water Code must be strictly followed. *See* TEX. WATER CODE ANN. § 36.251(c). "Statutes waiving sovereign immunity are to be strictly construed and do not provide for alternative filings or substantial satisfaction." *Gonzalez Cnty. Underground Water Conservation Dist. v. Water Prot. Ass'n*, No. 13-11-00319-CV, 2012 WL 1964549, at *5 (Tex. App.—Corpus Christi May 31, 2012, no pet.) (mem. op.). We conclude that Cockrell failed to invoke the jurisdiction of the trial court by failing to meet the prerequisite of having its motion for rehearing overruled at the district level whether by the district itself or by operation of law.

"The requirement of having a motion for rehearing overruled, thus exhausting administrative remedies, is a jurisdictional prerequisite to judicial review by the district court and cannot be waived by action of the parties." *Lindsay v. Sterling*, 690 S.W.2d 560, 563–64 (Tex. 1985) (finding the district court's jurisdiction was not invoked when plaintiff appealed to

---

[10] Rule 4.9, Middle Pecos Groundwater Conservation (amended October 21, 2014), https://www.twdb.texas.gov/groundwater/docs/GCD/mpgcd/mpgcd_rules2014.pdf.

the district court before the motion for rehearing was overruled); TEX. GOV'T CODE ANN. § 311.034 (Statutory prerequisites to a suit . . . are jurisdictional requirements in all suits against a governmental entity).[11] Therefore, we hold the decisions were not yet final; thus, the jurisdiction of the district court was not invoked to review the District's decisions on neither application.

Third and lastly, Cockrell asserts it identified fact issues within the District's evidence on whether Cockrell's request for party status at the 2017 hearing was timely, preventing a trial court from granting a plea to the jurisdiction. As we addressed above, even if the timeliness of Cockrell's request for party status were a disputed fact, Cockrell's actions after the District denied it party status failed to invoke the trial court's jurisdiction. "[I]f the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Miranda*, 133 S.W.3d at 228. Because Cockrell's asserted fact issues do not raise questions on the issue of exhaustion of administrative remedies, Cockrell failed to raise any jurisdictional fact issue.

We overrule the first and second issues in part.

## D. The UDJA and ultra vires claims

In its first and second issue, Cockrell further argues the trial court's jurisdiction was implicated in its UDJA claim against the District. Cockrell sought a declaration that the settlement agreement between the District, FSH and Republic was void as against public policy because the agreement, it argued, was a prohibited "Mary Carter" agreement.[12] In support of its claim, Cockrell

---

[11] Section 36.416 states that groundwater permit hearings are subject to subchapters C, D, and F of the Administrative Procedures Act, but this provision plainly does not include that such hearings are also subject to subchapter G, the subchapter that includes the savings clause for prematurely filed petitions. *See* TEX. WATER CODE ANN. § 36.146(a); *see also* TEX. GOV'T CODE ANN. § 2001.176(a) (providing that a prematurely filed petition is effective to initiate judicial review and is considered filed: (1) on the date the last timely motion for rehearing is overruled; and (2) after the motion is overruled).

[12] "A Mary Carter agreement exists when the settling defendant retains a financial stake in the plaintiff's recovery *and* remains a party at the trial of the case." *Elbaor v. Smith*, 845 S.W.2d 240, 247 (Tex. 1992).

18

asserts its "rights and legal status are directly affected" by the terms of the settlement agreement and it has jurisdiction to seek determination of the settlement's validity because it was a party to Republic's permit application. In its third issue, Cockrell asserts the trial court erred in granting McGuairt's plea to the jurisdiction. It argues it pleaded sufficient facts as a matter of law to maintain claims against McGuairt based on allegations that he committed ultra vires acts.

The Uniformed Declaratory Judgment Act (UDJA) is "merely a procedural device for deciding cases already within a court's jurisdiction." *El Paso County v. El Paso Cnty. Emergency Servs. Dist. No. 1*, 622 S.W.3d 25, 38 (Tex. App.—El Paso 2020, no pet.). The Supreme Court of Texas has held that sovereign immunity bars UDJA actions against the state and its political divisions absent a legislative waiver. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 (Tex. 2009). Jurisdictional limitations cannot be avoided by merely pleading claims under the UDJA, as this procedural vehicle does not operate as a general waiver of sovereign immunity. *Id.* at 370. Said differently, the UDJA does not enlarge the trial court's jurisdiction and a request for such relief does not alter a suit's underlying nature. *Id.* Associated with this rule, the ultra vires exception allows claims to be brought against a state official for non-discretionary acts unauthorized by law. *See Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011) (per curiam) (holding a proper defendant in an ultra vires action is the state official whose acts or omissions allegedly infringed on a party's rights). Immunity will be waived in a declaratory judgment action that challenges the validity of a statute. *Id.* at 622. But the UDJA does not waive sovereign immunity when the claimant seeks a declaration of his or her rights under a statute or other law. *Heinrich*, 284 S.W.3d at 372–73.

19

### 1. The UDJA claim against the District

Here, Cockrell seeks a declaration that the settlement agreement entered into by the District, FSH, and Republic was void as against public policy as a prohibited "Mary Carter" agreement. This request does not seek a declaration concerning the validity of any statute or other law. Instead, Cockrell seeks a declaration as to the District's actions in entering into a settlement agreement which resulted in the granting of permits. The District has discretion to grant permits. *See* TEX. WATER CODE ANN. §§ 36.113, .114, .401–.418. Cockrell has not challenged the validity of any statute granting such discretionary authority to the District.

For this reason, the UDJA does not waive the District's immunity with respect to Cockrell's claim to declare the settlement agreement void. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.006(b) (waiving sovereign immunity for claims challenging the validity of ordinances or statutes); *Sefzik*, 355 S.W.3d at 622 (holding governmental immunity was not waived when challenger did not challenge the validity of a statute but rather the agency's actions under the statute); *Boll v. Cameron Appraisal Dist.*, 445 S.W.3d 397, 400 (Tex. App.—Corpus Christi 2013, no pet.) (finding UDJA claims failed to establish a waiver of immunity when appellants were not challenging the validity of any provision of the tax code but instead challenged the appraisal district's actions under the statute).

Because Cockrell has failed to affirmatively plead a valid waiver of immunity, we overrule the remaining part of its first and second issues.

### 2. The ultra vires claim against the board president

The same immunity of a governmental entity or political subdivision extends to the entity's officials who are sued in their official capacities. *Heinrich*, 284 S.W.3d at 373. However, a claim seeking to require a state official to comply with statutory or constitutional provisions is not

prohibited by sovereign immunity. *Id.* at 372. Claims that affirmatively allege that an agency's action is unconstitutional, or ultra vires of the agency's statutory authority, can invoke a trial court's "inherent jurisdiction" to protect against such action. *Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envt. Quality*, 307 S.W.3d 505, 515 (Tex. App.—Austin 2010, no pet.). "To assert a valid ultra vires claim, the plaintiff 'must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act.'" *Id.* (quoting *Heinrich*, 284 S.W.3d at 372). However, if the plaintiff only alleges facts demonstrating acts within the officer's legal authority and discretion, the plaintiff's claim seeks to control state action and is barred by sovereign immunity. *Heinrich*, 284 S.W.3d at 372. When determining whether a party has asserted a valid ultra vires claim, we construe the relevant statutory provisions and apply them to the facts as alleged in the pleadings. *See Texas Dep't of Transp. v. Sunset Transp., Inc.*, 357 S.W.3d 691, 701-02 (Tex. App.—Austin 2011, no pet.); *Tabrizi v. City of Austin*, 551 S.W.3d 290, 298 (Tex. App.—El Paso 2018, no pet.). Simply because a "claimant purports to allege 'ultra vires' or 'unconstitutional' conduct by a state official does not alone mean that it has avoided sovereign immunity and invoked a trial court's inherent jurisdiction." *Creedmoor-Maha Water Supply Corp.*, 307 S.W.3d at 515.

The District and McGuairt assert Cockrell's ultra vires claim fails for two reasons: first, because the claim does not seek to compel McGuairt to comply with any statutory or constitutional provision; and second, because its claim seeks retrospective relief. FSH asserts Cockrell's sole basis for its ultra vires claim is its assertion of an "unsubstantiated allegation of a 'Mary Carter' scheme" surrounding the 2017 Settlement Agreement. FSH argues "[t]he overwhelming and uncontroverted evidence . . . is that the settlement agreement was approved by the majority of the

Directors of the District's governing body as required by" § 36.053 of the Texas Water Code. *See* TEX. WATER CODE ANN. § 36.053 (stating "a majority of the entire membership of the board is sufficient for transacting any business of the district").

In its pleadings, Cockrell affirmatively asserts the trial court had independent jurisdiction over its claims because the "District board members may be sued in their official capacity for *ultra vires* acts." But even so, Cockrell never asserts any specific facts to show McGuairt acted outside his authority. Instead, Cockrell argues that McGuairt's actions in signing the settlement agreement was an ultra vires act because the settlement agreement allegedly violated public policy and was illegal as a matter of law. A pleading allegation, however, "merely asserting legal conclusions or labeling a defendant's actions as 'ultra vires,' 'illegal,' or 'unconstitutional' does not suffice to plead an ultra vires claim—what matters is whether the facts alleged constitute actions beyond the governmental actor's statutory authority, properly construed." *Kilgore Indep. Sch. Dist. v. Axberg*, 535 S.W.3d 21, 30 (Tex. App.—Texarkana 2017, no pet.) (quoting *Sunset Transp., Inc.*, 357 S.W.3d at 702). To that extent, Cockrell's conclusory statements asserting McGuairt signed a settlement agreement that it alleges is a violation of public policy is insufficient to support an ultra vires claim against McGuairt. Cockrell has not cited, nor are we otherwise aware, of any authority supporting an argument that a groundwater district or its board members are prohibited from entering into a settlement agreement regarding a permit application.

Additionally, the settlement agreement which Cockrell seeks to invalidate has already been fully formed in that (1) the District granted FSH's permits, (2) FSH did not pursue its appeal, and (3) Republic withdrew its permit request. For Cockrell to request the settlement agreement be declared void, is a claim that requests retrospective relief by its nature and form. *See City of El Paso v. Waterblasting Techs., Inc.*, 491 S.W.3d 890, 909 (Tex. App.—El Paso 2016, no pet.)

22

(stating a plaintiff, in an ultra vires action, may only seek prospective relief rather than retrospective remedies).

Cockrell argues its requested relief is not retrospective because it does not seek monetary relief. However, in cases where a party requests an already-performed contract to be declared void, the remedy is retrospective and not permitted under an ultra vires action. *See id.* (finding plaintiff's only relief possible was to invalidate the already performed contract, "a remedy that is not only moot, but is retrospective in nature and therefore not permitted" when claiming an ultra vires exception); *City of Austin v. Util. Assocs., Inc.*, 517 S.W.3d 300, 309 (Tex. App.—Austin 2017, pet. denied) ("The remedy must be prospective in nature—i.e., compelling legal compliance going forward, as opposed to awarding retrospective relief to remedy past violations.").

For these reasons, we overrule Cockrell's third issue.

## III. RENDER OR REMAND TO ALLOW RE-PLEADING

When we determine that a trial court lacked jurisdiction, and the plaintiff has not yet had an opportunity to cure the jurisdictional defects, we must remand to the trial court to afford the party an opportunity to cure the defects in the pleadings. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 96 (Tex. 2012); *Miranda*, 133 S.W.3d at 231. Additionally, we also recognize a right to amend when the pleadings fail to allege enough jurisdictional facts to similarly demonstrate the trial court's jurisdiction. *Texas Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002). "Generally, remand is a mechanism for parties, over whose claims the trial court may have jurisdiction, to plead facts tending to establish that jurisdiction, not for parties, over whose claims the trial court does not have jurisdiction, to plead new claims over which the trial court does have jurisdiction." *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 559 (Tex. 2016). But, when the pleadings affirmatively negate the existence of jurisdiction, dismissal is appropriate, and we need

not afford an opportunity to amend. *Miranda*, 133 S.W.3d at 226–27.

Here, our determination that the trial court lacks jurisdiction arises not from a pleading defect but rather from the nature of Cockrell's claims. Additionally, after the District initially filed its plea to the jurisdiction, Cockrell amended its pleadings on two subsequent occasions. To this extent, Cockrell has had the opportunity to amend and replead, and thus, it would not now be denied an opportunity to cure the defect. *See Clint Indep. Sch. Dist.*, 487 S.W.3d at 559 (noting that a party had the opportunity to, and did in fact, amend their pleading in the trial court after the filed plea to the jurisdiction). Moreover, in briefing on appeal, Cockrell does not request an opportunity to cure its pleadings. Nor does it propose to add additional jurisdictional facts or provide any suggestion on curing the jurisdictional defects of its claims.

Therefore, we conclude the pleadings and record affirmatively negate the existence of jurisdiction and we need not remand for an opportunity to replead. *Id.*

## IV. CONCLUSION

We affirm.

GINA M. PALAFOX, Justice

February 16, 2023

Before Rodriguez, C.J., Palafox, and Alley, JJ.
Alley, J. (not participating)

24